**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**


**UNITED STATES OF AMERICA,**          )
                                       )
**v.**                                 )     **NO. 5:07CR-16-009 (WDO)**
                                       )
**LEONARD EARNEST ROYSTER,**           )
        **Defendant.**                 )


### DEFENDANT ROYSTER'S PARTICULARIZED MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND BRIEF IN SUPPORT

COMES NOW the Defendant Leonard Earnest Royster (hereinafter "Royster"),

by and through undersigned counsel, pursuant to Fed.R.Crim.P. 12(b)(3)(C), and moves

this Court for an evidentiary hearing, a *Jackson v. Denno* hearing, and an order

suppressing all evidence of any kind and the fruits thereof– including alleged physical

evidence, statements, identification, and testimony—illegally seized by law enforcement

agents in violation of Defendant's Fourth, Fifth, Sixth or Fourteenth Amendment rights,

18 USC 2234, 18 USC 2510, et seq, or Fed.R.Crim.P. 41, during and subsequent to an

illegal wiretap of Defendant's telephone communications, an illegal search and seizure of

Defendant's person, property, and residence, and all illegal questioning by law

enforcement.

### I.  MOTION TO SUPPRESS INTERCEPTED COMMUNICATIONS

Pursuant to the Fourth Amendment to the United States Constitution and 18 USC

2515 and 2518(10)(a), Defendant moves this Court to suppress any and all evidence

obtained through intercepted wire or oral communications.  As grounds thereof,

Defendant alleges that the wiretaps were improper, illegal, and without probable cause, in

violation of Defendant's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution in the following particulars:

## A. STANDING

Movant has standing to contest the legality of any and all interceptions of his wire/oral communications in that Movant is an "aggrieved" person pursuant to 18 USC 2510 *et seq.,* particularly 18 USC 2510(11), in that his phones were the subject of the intercepted communications and he was a party to intercepted communications. ***See, e.g.*** H.Rep. No.1549, 91st Cong. 2nd Sess., ***United States v. Tucker,*** *526* F.2d 229, 282 & n. 4 (5th Cir. 1976) (a cognizable "claim" need be no more than a "mere assertion" provided that it is a positive statement that interception was illegal); ***United States v. Pacella,*** 622 F.2d 640 (2d Cir. 1980); ***United States v. Williams,*** 580 F.2d 578 (D.C. Cir. 1978).

## II.  REQUIREMENTS OF INTERCEPTION OF PRIVATE COMMUNICATIONS

## A. STATUTORY FRAMEWORK AND REQUIREMENTS

1.  The fundamental framework behind all wiretapping statutes, whether state or federal, is the protection of privacy rights of citizens from unwarranted invasions by government (or private) intrusions.  To protect that "fundamental" right, both federal and state governments have erected statutory barriers to the interception of presumptively private conversations.

2.  To that end, in 1968 Congress passed Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC 2510-2521) to conform to the constitutional standards governing wiretaps prescribed by the Supreme Court in ***Berger v. New York,*** 388 U.S. 41(1967), and ***Katz v. United States,*** 389 U.S. 347 (1967). That Act, as amended, requires (at a minimum) the following:  a full and complete

statement of the alleged offense, the facilities where the communications are to be intercepted, a particular description of the communications sought to be intercepted, the identity of the persons committing the offense and of persons whose communications are to be intercepted, a full and complete statement of whether or not other investigative procedures have been tried and failed or why they appear unlikely to succeed or are too dangerous, and a full and complete statement of the period of time for which the interception is to be maintained. *See, e.g.* 18 USC 2518(1)(c) and (3)(c), ***United States v. Kahn,*** 415 U.S. 143, 153 n. 12(1974); ***United States v. Giordano,*** 416 U.S. 505 (1974). Additionally, any application must include information concerning previous applications involving any of the same persons, facilities or places. 18 USC 2518(1 )(e).

3.  If presented with an appropriate application, a court may actually issue a surveillance order for interception of private communications only if it finds probable cause[1] to believe that (1) a person is committing one of the crimes enumerated in Title III; (2) communications concerning such an offense will be obtained through interception, and (3) the facilities from which the communications are to be intercepted are being used in connection with the offense. 18 USC 2518(3)(a), (b) and (d).[2]

4.  If the above is met, a court may issue an order which specifies the identity of the person whose communications are to be intercepted, 18 USC 251 8(4)(a), and the nature and location of the communications facilities or the place where the

---

[1]   The probable cause standard is the same as that used in ordinary search warrants, ***see, United States v. Green,*** 40 F.3d 1167 (11th Cir. 1994); ***United States v. Wagner,*** 989 F.2d 69, 71 (2nd Cir. 1993).

[2]   Of course, the court must find that investigative techniques have failed.

interception will occur. 18 USC 2518(b). The order must also specify the type of communication to be intercepted, the particular crime to which it relates, and length of authorized interception. 18 USC 2518(4)(c) and (e).

5. The order itself must be executed "as soon as practicable" and "terminate upon attainment of the authorized objective".  18 USC 2518(5).  Periodic progress reports may also be required.  *See,* 18U5C 2518(6); *United States v. Van Horn,* 789 F.2d 1492, 1499 (11th Cir. 1986).

6. Post-authorization duties attendant to the execution of an interception warrant include, *inter alia,* minimization,[3] and timely sealing.[4]

7. Finally, Title III must be strictly construed in favor of privacy interests because Congress intended Title III's procedural controls to be a "pre-condition to the acceptability of any wiretapping at all."

8. Title III also contains a "necessity" requirement, separate and distinct from any probable cause requirement, that must be satisfied before a wiretap order may be lawfully issued.  18 USC 2518(1)(c), 2518(3)(c).  The purpose of the necessity requirement is "to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  *United States v. Edwards,* 69 F.3d 419,429 (10th Cir. 1995) quoting *United States v. Kahn,* 415 U.S. 143,153 n.12(1974).  Thus, before

---

[3]   18 USC 2518(5); *United States v. Moody,* 977 F.2d 1425 (11th Cir. 1992); *Gonzalez v. State*, 175 Ga. App. 217 (333 S.E.2d 132 (1985).

[4]   18 USC 2518(8)(a) and (b); *United States v. Matthews,* 431 F.3d 1296 (11th Cir. 2005); *United States v. Ojeda Rios,* 495 U.S. 257 (1990); *Gilstrap v. State*, 162 Ga. App. 415 (227 S.E.2d 773) (1981); *King v. State,* 262 Ga. 147 (414 S.E.2d 206) (1992).

issuing a wiretap order, a court must independently determine that the requested wiretap is necessary. ***See, e.g., United States v. Mondragon,*** 52 F.3d 291, 293 (10th Cir. 1995).

9. To meet this burden, "generalities, or statements in the conclusory language of the statute, are insufficient to support a wiretap application". ***United States v. Castillo-Garcia,*** 117 F.3d 1179, 1188 (l0[th] Cir. 1997). In ***United States v. Blackmon***, 273 F.3d 1204 (C.A. 9th Cir. 2001), the Court held that a wiretap application is insufficient where it contains "only general allegations that would be true in most narcotics investigations . . . [and] boilerplate conclusions that merely describe inherent limitations of normal investigative procedures." Id. at 1210.

   In fact, "[T]he statements must be factual in nature and they must specifically relate to the individuals targeted by the wiretap." ***Id. See also United States v. Smith,*** 31 F.3d 1294 (4th Cir. 1994); ***United States v. Ashley,*** 876 F.2d 1069, 1072 (1st Cir. 1989) ("bare conclusory statements"); ***United States v. Leavis,*** 853 F.2d 215 (4th Cir. 1988); ***United States v. McKinney,*** 785 F.Supp. 1214 (D. Md. 1992); ***United States v. Ippolito,*** 774 F.2d 1482 (9th Cir. 1985); ***United States v. Robinson,*** 698 F.2d 448 (D.C. Cir. 1983); ***United States v. Kalustian,*** 529 F.2d 585 (9th Cir. 1976).

10. Similarly, the adoption of the exact language from prior applications fails to satisfy the congressional intent that the government must show with specificity in each application why it will fail in lieu of a wiretap order. ***See Castillo-Garcia,***

*supra.  See also, United States v. Simpson,* 813 F.2d 1462, 1471-1472 (9th Cir.

1987); *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988).

11. That is, identity between applications indicates that the government "never paused

to give further renewed consideration of...normal investigative procedures...and it

never really tried to use any of these procedures…(and the government)

proceeded from one wiretap to another." *United States v. Castillo-Garcia,* 920

F.Supp. 1537,1543 (D.Colo. 1996) aff'd 117 F.3d 1179 (10th Cir. 1997). Thus, in

order to obtain an electronic surveillance order, the government must move

beyond "bare conclusory statements" *Ashley, supra,* or "mere boilerplate

recitations," *Leavis, supra,* to explain fully... with particularity", *Castillo- Garcia,*

why specific techniques would either be unsuccessful or too dangerous.

12. With regard to minimization, section 2518(5) requires each initial and extension

order to include a minimization requirement. *See Scott v. United States,* 436 U.S.

128 (1978). Minimization embodies the constitutional requirement of avoiding, to

the greatest possible extent, seizure of conversations which have no relationship

to the crimes being investigated, and limiting the scope of any invasion of privacy

by the government. *See Berger v. New York,* 388 U.S. 41 (1967).  To accomplish

minimization, the most effective form of supervision is judicial review of the

progress. *See United States v. Quintana,* 508 F.2d 867 (7th Cir. 1975); Section

2518(6).  Courts have also approved a "two-minute" rule, *see, e.g. United States*

***v. Moody,*** 762 F.Supp. 1491, 1497 (N.D. Ga. 1991), to determine the pertinence of the conversation.[5]

13. Because Movant contends that insufficient minimization procedures were utilized ***sub judice,*** the burden is on the government to show proper minimization. ***United States v. Torres,*** 908 F.2d 1417 (9th Cir. 1990); ***United States v. Armocida,*** 515 F.2d 29 (3rd Cir. 1975); ***United States v. Rizzo,*** 491 F.2d 215, 217, n.7 (2nd Cir. 1974).

14. In order to fully litigate this issue, Movant requests a hearing at which the government must bear the burden of proof as to, ***inter alia:***

    a.   The number and identification of intercepted conversations which were "coded" and the efforts and techniques utilized to "decode" such conversations either at the time or after the conversation;

    b.   How soon after the termination of any conversation the minimization occurred; and

    c.   Who accomplished the minimization.

## III.  <u>GROUNDS FOR SUPPRESSION OF WIRETAPS</u>

Defendant Leonard Earnest Royster moves, pursuant to Fed.R.Crim.P. 12(b)(3) and 41(f), 18 USC 2515 and 25 18(10)(a) and the Fourth Amendment to the United States Constitution to suppress the contents of any wire or oral communication intercepted pursuant to a series of court orders described below and any evidence derived therefrom on the grounds that:

---

[5]    Although after surveillance has been underway for some period, two minutes for determining pertinence is too long.  ***See United States v. Parks,*** 1997 WL 136761, at 18 (N.D.Ill. 1997)**.**

a. The communications were unlawfully intercepted;

b. The orders of authorization were insufficient on their face;

c. The applications and court orders were obtained in violation of 18 USC 2515 and 2518;

d. The interceptions were not made in conformity with the court orders or with the requisites of 18 USC 2518(5);

e. The interceptions were not sealed immediately in accordance with 18 USC 2518(8).

Movant alleges the following grounds in support of this motion and reserves the right to supplement this motion upon receipt of any additional documents reflecting on the matters herein.

## A. The Illegal Wiretap Orders

1. On September 21, 2006, the Government obtained an order for a wiretap of telephone numbers (229) 402-7806 and (229) 347-1553, both allegedly belonging to Anthony Sean Walker. [6] (Vol. IV)[7]

2. On October 20, 2006, the Government obtained a 30-day extension for the monitoring of (229) 402-7806 and (229) 347-1553. (Vol. V)

3. On November 21, 2006, the Government obtained an additional 30-day extension for the monitoring of (229) 402-7806 and (229) 347-1553.

---

[6] The interception of wire and electronic communication in this matter stemmed from this order for interception of Walker's telephones. Subsequent wiretap orders were obtained for Defendant's telephone (see below) and other telephones, all involving the same investigation of an alleged drug conspiracy.

[7] Because discovery consists of ten volumes of documents that do not contain Bates numbers, all references to discovery are hereinafter referred to as the volume in which they appear, "(Vol. [Volume Number])."

4. On December 5, 2006, law enforcement ceased interception of communications for (229) 347-1553, but did not seal the original recordings until December 8, 2006. (Vol.VIII)

5. On December 20, 2006, law enforcement ceased interception of communications for (229) 402-7806, but did not seal the original recordings until December 22, 2006. (Vol. X)

6. On October 24, 2006, the Government obtained an order for a wiretap of telephone number (229) 392-9234, allegedly belonging to Anthony Sean Walker. A 30-day extension for this number was obtained on November 29, 2006.

7. On December 20, 2006, law enforcement ceased interception of communications for (229) 392-9234, but did not seal the original recordings until December 22, 2006. (Vol. X)

8. During interception of Walker's telephones (229) 402-7806, (229) 347-1553, and (229) 392-9234, Defendant Leonard Royster allegedly used (229) 392-6181 and was allegedly captured making statements on the following dates: [8]

   i. On September 26, 2006, during interception of Walker's (220) 347-1553 phone, for calls #106, #112, #113, and #126,

   ii. October 3, 2006, during interception of Walker's (220) 402-7806 phone, for calls #1058, #1075, #1173,

---

[8] The phone calls listed are only the calls that law enforcement referenced in the wiretap applications. Discovery indicates that hundreds of telephone calls were intercepted for these numbers.

iii. October 4, 2006, during interception of Walker's (220) 402-7806 phone, for call #1246,

iv. October 4, 2006, during interception of Walker's (220) 347-1553 phone, for call #433 and #444

v. October 11, 2006, during interception of Walker's (220) 347-1553 phone, for call #764, (Vol. V),

vi. October 16, 2006, during interception of Walker's (220) 347-1553 phone, for call #1043 and #1049,

vii. November 17, 2006, during interception of Walker's (220) 347-1553 phone, for call #2665, (Vol. VII), and

viii. November 17, 2006, during interception of Walker's (220) 392-9234 phone, for call #1161 and #1221. (Vol. VIII).

9. Defendant believes that the Government is likely to introduce said statements into evidence against him at trial.

10. Because the wiretap was illegally issued as stated herein, said statements should be suppressed from evidence at trial.[9]

11. On October 4, 2006, the Government sought to obtain 14 days of phone records for phone (229) 392-6181, by purportedly using the authority of a

---

[9] Because Defendant is allegedly captured on the wiretaps for Walker's telephones, Defendant has standing to challenge the validity of the wiretap warrant. The pertinent information in the application for the wiretaps of Walker's telephones was also included in the applications for the wiretaps of Defendant's telephone, as discussed below. Defendant can further particularize his challenge to the validity of these warrants if the Court desires him to.

court order previously obtained for Anthony Walker's two phones. (Vol. 5)

12. On October 5, 2006, the Government obtained the "call detail records" of Defendant's alleged phone (229) 392-6181 for the timeframe of 9/19/2006 – 10/03/2006.[10]  (Vol. V)

13. On October 16, 2006, Agent Dell Cole of the GBI went before Judge Gary McCorvey, a Superior Court judge of Tift County, sought and obtained an order authorizing the interception of wire communications of telephone number (229) 392-6181, a phone allegedly subscribed to by Defendant.

14. On November 14, 2006, the Government obtained a 30-day extension for (229) 392-6181.

---

[10]  The affidavit did not provide any information which led the Government to obtain a pen register for Defendant's phone other than the fact they used a court order concerning completely different phones and for a different person.   Therefore, Defendant has the right to challenge the validity of the pen register as described. Several courts have held that existing law does not permit the Government to obtain this type of information on a prospective, real-time basis without a showing of probable cause. At least five courts have rejected the Government's request for prospective or real time cell site data. *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d 747 (S.D.Tex.2005); *In the Matter of an Application of the United States for an Order (1) Authorizing the Use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Information and/or Cell Site Information,* 396 F.Supp.2d 294 (E.D.N.Y.2005); *In re Application of the United States for an Order Authorizing the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers (Sealed) and the Production of Real Time Cell Site Information,* 2005 WL 3160860 (D.Md. Nov.29, 2005); *In re Matter of the Application of the United States of America for an Order Authorizing the Release of Prospective Cell Site Information,* 2006 WL 41229 (D.D.C. Jan.6, 2006) and *In the Matter of the Application of the United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information,* 2006 WL 243017 (E.D.Wis. Jan. 17, 2006).

15. On December 14, 2006, the Government ceased interception of communications from (229) 392-6181, but did not seal the original recordings until On December 20, 2006. (Vol. IX)

16. During interception of (229) 392-6181, Defendant Leonard Royster was allegedly captured making statements on the following dates: [11]

   i. October 23, 2006, during interception of call #185, #189, #193, #195, (Vol. VIII), and

   ii. November 4, 2006, during interception of call #581, 588, 600, 644, 766.

17. Defendant believes that the Government is likely to introduce said statements into evidence against him at trial. [12]

18. Because the wiretaps were illegally issued as stated herein, said statements by Defendant should be suppressed from evidence at trial.

19. Defendant expressly reserves the right to amend this motion promptly upon notification or discovery of any additional searches, seizures, or statements not described herein, or any additional discovery.

**B.  Legal Basis for Challenge**

1. The communications were unlawfully intercepted.  The applications and affidavits for the interception of (229) 402-7806, (229) 347-1553, (229)

---

[11]  The phone calls listed are only the calls that law enforcement referenced in the wiretap applications.  Discovery indicates that hundreds of telephone calls were intercepted for this number.

[12]  Defendant reserves the right to challenge the validity of any other statements not stated herein made by Defendant and obtained pursuant to or resulting from above described wiretaps in which the Government is likely to seek to introduce into evidence against him at trial.

392-9234, and (229) 392-6181 failed to provide probable cause for the issuance of any order for wiretap interception.[13] In addition:

a. The affidavits failed to provide probable cause that the target telephones were being used to commit any offenses in violation of the law.

b. The affidavits contained "unsupported hearsay" which does not rise to the level of probable cause. Furthermore, the affidavits relied on information from an alleged "informant," a.k.a., "CI #80-672," whose reliability and veracity were not established in the applications.

c. The affidavit contains stale information several months old and included wholly conclusory statements.

d. The affidavit contained information that is either deliberately false, misleading, and/or mistaken. Franks v. Delaware, 438 U.S. 154 (1978), particularly at 164-165. For example, the affidavit states that during the interception of communications from Walker's phones, "it was *determined* that Leonard Earnest Royster was one of the major sources of supply of cocaine for Anthony Walker," yet failed to state how law enforcement came to this bold conclusion. (Vol. V)

---

[13] It should be noted that for the year of 2006, a total of 1,839 surveillance warrants were authorized (461 Federal and 1,378 State) and **zero** applications for warrants were denied. See wiretap statistics of the Administrative Office of the US Courts http://www.uscourts.gov/wiretap06/contents.html

2. The order is invalid on its face in that it fails to specify the persons whose communications may be intercepted. 18 USC 2518(4). This requirement is separate and distinct from the requirements of 2518(1)(b)(iv)(requiring the *application* specify the identity of the persons known to be committing the offense) and 2518(3)(a)(requiring the Judge to find probable cause that an individual is committing a particular offense prior to entering a wiretap order). The order *sub judice* fails to specify the identity of the persons whose communications may be intercepted on the targeted phones.

3. The application and affidavit is invalid in that they do not contain sufficient probable cause and necessity for *each telephone*. An application must establish probable cause for each such telephone. *See United States v. Carneiro*, 861 F.2d 1171, 1176-77 (9th Cir. 1988).

4. Upon information and belief the law enforcement agents failed to comply with the minimization requirement of 18 USC 2518(5). The burden is on the Government to show proper minimization. *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990); *United States v. Rizzo*, 491 F.2d 215, 217, n.7 (2nd Cir.), *cert. denied*, 416 U.S. 990 (1974). The Government's pervasive and substantial failure to minimize non-pertinent calls as a whole in this case allows the inference that the Government engaged in an essentially warrantless, general search, warranting the suppression of all intercepted calls. *United States v. Suquet*, 547 F.Supp. 1034, 1037 (N.D. IL 1982). *See United States v. Blackmon*, 273 F.3d 1204 (C.A. 9th Cir. 2001).

5. The applications and orders are insufficient on their face in their failure to provide a sufficiently particular description of the type of communication sought to be intercepted as required by 18 USC 2518(1)(b)(ii) and 18 USC 2518(4)(c).

6. The applications and orders are insufficient on their face because they fail to provide a sufficient showing that other investigative techniques have failed or why they reasonably appear to be unlikely to succeed if tried as required by 18 USC 2518(1)(c) and 18 USC 2518(3)(c). In addition, the subsequent applications for wiretaps simply reiterate the boilerplate and earlier allegations found in the initial application. There is simply *no* normal investigation once the electronic surveillance commences.

      The affiant stated that the information provided by CI #80-672 "regarding Walker and his cocaine distribution network is very specific and involves information that only very few people including SA Cole are aware of." (Vol. V) Yet the affiant later insisted that because the confidential informant(s) could not identify "<u>all</u>"of the individuals associated with Royster and Walker, they would not suffice. <u>Id.</u> The informant, CI #80-672, was allegedly privy to information from Lorenzo Jackson, one of the alleged associates of Walker and Royster. <u>Id.</u> In fact, a controlled buy was set up between the informant and Walker through Jackson. Law enforcement purportedly identified Jason White, an alleged additional associate of Walker and Royster, and learned information about White through his tag number. Walker was also allegedly present in his

vehicle during the transaction.  The mere assertion that the informant

could not provide information on <u>all</u> of the individuals involved omits the

extent to which the informant could have been successfully employed by

the Government in gathering evidence against Defendant.  Here, the

informant obtained information on another individual allegedly associated

with Walker and Royster on law enforcement's first attempt of contact

through a controlled buy. [14] ***United States v. Blackmon***, 273 F.3d 1204,

1209 (C.A. 9th Cir. 2001) (the statement "that the cooperating sources

'only possess limited knowledge concerning the scope of the criminal

enterprise'" is untrue and omits the extent to which the sources could have

been used in gathering evidence against Blackmon).

The affidavit admits that law enforcement already had wiretaps for

Walker's telephones and that Royster was allegedly captured on

communications with Walker discussing intimate details of alleged drug

activity.  Thus, law enforcement were already able to record and/or

monitor conversations between Walker and Defendant and no additional

wiretap on Defendant's phone was necessary.  The affiant's assertions that

"confidential informants normally have only limited information either

furnished by a subject or learned second hand from others," "physical

surveillance, in and of itself, even if highly successful, rarely succeeds in

---

[14] Furthermore, the search warrant application for Royster's residence, dated December 12, 2006, indicates that there were other informants purportedly used during the investigation, including "Source 1," who "provided information to affiant since late September to present" and who allegedly was privy to information about when Royster allegedly contacted his "source of supply." <u>See</u> (Vol. IX)

gathering evidence," "toll records only provide circumstantial evidence," and that "routine law enforcement methods have been tried and failed or have proven to be impractical in this investigation and will not result in the successful arrest and prosecution of Leonard Royster, culpable family members and other conspirators yet unknown," (Vol. V), are boilerplate conclusions describing the inherent limitations of normal investigative procedures. *See United States v. Blackmon*, 273 F.3d 1204, 1210 (C.A. 9th Cir. 2001).

The "necessity" requirement of 2518(1)(c) and 2518(3)(c) – a separate and distinct from its probable cause requirement – must be satisfied before a wiretap order may be lawfully issued. The purpose of the "necessity" requirement is "to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 (1974); *United States v. Leavis*, 853 F.2d 215, 221 (4th Cir. 1988)("The mere 'boilerplate recitation of the difficulties of gather usable evidence' cannot suffice"). Movant requests an evidentiary hearing regarding any assertion that the statutory requirements of 2518(1)(c) and (d) have been met.

7. The applications and orders are insufficient and in violation of 18 USC 2518(1 )(b) and 18 USC 2518(3)(b) in their failure to set forth facts constituting *continued* probable cause for a belief that particular

communications concerning various narcotics offenses would be obtained through interception of (229) 402-7806, (229) 347-1553, (229) 392-9234, and (229) 392-6181.

8. Most importantly, the wiretaps were not sealed in accordance with 18 USC 2518(8)(a). That statute dictates that all interception recordings must be sealed "immediately upon the expiration of the period of the order" allowing the interceptions. In the absence of immediate sealing, the recordings must be suppressed, absent a satisfactory explanation from the Government stating not only why the delay occurred, but also why the delay is excusable. ***United States v. Ojeda-Rios*,** 495 U.S. 257, 265 (1990).

a. Here, in the case of Defendant's alleged phone number of (229) 392-6181, law enforcement ceased interception of communications on December 14, 2006, yet did not seal the original recordings until December 20, 2006. (Vol. IX) Further the Government did not seal the recordings after the first wiretap issued on October 16, 2006 expired and prior to obtaining a 30-day extension on November 14, 2006. (Vol. IX)

b. As for the wiretaps on Walker's telephones in which Defendant is allegedly captured, they suffer the same defects. In the case of the (229) 402-7806 and (229) 347-1553, law enforcement obtained a wiretap order on September 21, 2006 and 30-day extensions on October 20, 2006 and November 21, 2006. (Vol. VIII, X)

c.  On December 5, 2006, law enforcement ceased interception of communications for (229) 347-1553, but did not seal the original recordings until December 8, 2006. (Vol.VIII)

d.  On December 20, 2006, law enforcement ceased interception of communications for (229) 402-7806, but did not seal the original recordings until December 22, 2006. (Vol. X)

e.  Law enforcement failed to seal the recordings after the first wiretap expired and between the 30-day extension periods.  Moreover, law enforcement failed to immediately seal them after interception ceased. (Vol. VIII, X)

f.  The original recordings obtained for (229) 392-9234 where the wiretap was obtained on October 24, 2006 and given a 30-day extension on November 29, 2006, suffer the same deficiencies as the others. (Vol. X)

g.  On December 20, 2006, law enforcement ceased interception of communications for (229) 392-9234, but did not seal the original recordings until December 22, 2006. (Vol. X)

9.  "Immediate" has not been defined as a certain number of days, but it is clear that sealing recordings within two days of expiration does satisfy 18 USC 2518(8).  **United States v. Wong**, 40 F.3d 1347 (2d Cir. 1994) (two days with intervening holidays is immediate).  **See also, United States v. Williams**, 124 F.3d 411 (3d Cir. 1997); **United States v. Wilkinson**, 53 F.3d 757 (6th Cir. 1995); **United States v. Pitera**, 5 F.3d 624 (2d Cir. 1993).  Thirty-two days between expiration of the order and sealing,

however, is not "immediate" in terms of the statute. ***United States v. Jackson***, 207 F.3d 910, 915 (9th Cir. 2000).

10. Movant realleges and incorporates herein the allegations made herein regarding the original wiretap order for all the subsequent wiretap orders. The affidavits and applications suffer the same deficiencies as the original.

11. The Court must examine the validity of the above wiretaps because there is no "good faith exception" for warrants obtained pursuant to Title III. ***United States v. Rice***, 478 F.3d 704, 711 (C.A. 6th Cir. 2007). ***But see, United States v. Malekzadeh***, 855 F.2d 1492, 1497 (C.A. 11th Cir. 1988).

12. Therefore, any and all interceptions of Defendant's oral or wire communications in which he was the subject of the intercepted communications or a party to the intercepted communications should be suppressed from evidence at trial. Further, any evidence derived as a result of the illegal interceptions should be suppressed from evidence at trial.

## IV.     THE ILLEGAL SEARCH OF 3101 THIRD AVENUE

### A. The Affidavit

1. On December 12, 2006, Agent Mike O'Hara sought and obtained a search warrant for "3101 3rd. Ave. Tifton, Georgia." (Vol. IX)

2. O'Hara alleged that a "confidential source," referred to as "Source 1" "has been proven to be reliable and truthful" since the end of September, as "information given by Source 1 . . . has been verified by agents." Id.

3. "Source 1 revealed that Walker contacted Royster and ordered a large quantity of cocaine and Royster met with and delivered the cocaine to Walker on a rural country road. This was verified through surveillance and the use of a court ordered vehicle tracking device that had been placed on one of Walker's vehicles." Id.

4. The affiant alleged that on November 17, 2006, nearly a month prior to the application, surveillance was placed on Royster's residence. Royster allegedly backed his vehicle into his garage with the trunk open. Royster allegedly went to a lot where he kept his semi parked and was seen "carrying something" to his semi. Royster then allegedly traveled two miles to Pilot Truck Stop and met with a male who was driving a burgundy semi. Royster allegedly returned home and the burgundy semi was stopped by law enforcement in Butts County, Georgia. "A search of the semi revealed a black in color suitcase in the cab of the semi that contained 51 bundles of U.S. currency that totaled $828,970.00." Id.

5. Source 1 allegedly revealed that "in the past 48 hours Royster has spoken to the source of supply in which Royster inquired about another shipment of cocaine." Id.

6. The application sought seizure of "cocaine, U.S. currency and all packaging, receipts, ledgers, documents, containers and proceeds derived from and used in the distribution of cocaine." Id.

7. The application was defective in the following particulars:

    i. The affidavit was not supported by probable cause.

      ii.  The affidavit contained stale information at the time the warrant was issued.

     iii.  The affidavit was unconstitutionally over-broad and non-particularized in describing the items to be seized.

8. Therefore, because the warrant was overbroad, not particularized, and not supported by probable cause, the warrant was unlawfully obtained and all evidence resulting from the search should be suppressed from evidence at trial.

## B. The Illegal Search

1. On December 19, 2006, seven days after obtaining the warrant, law enforcement officers purportedly made contact with Diane Royster and entered the residence.  (Vol. IX)

2. Officers searched the residence and seized certain alleged items, including a Food Saver vacuum system, food saver bags, rolls of Saran wrap, a clear plastic container, a straw basket, rubber bands, money counter, safes, miscellaneous documents, and U.S. currency. Id.

3. The Defendant expects the Government to attempt to introduce the seized items, and/or photographs or testimony about the items, as evidence against him at trial.

4. Because officers did not have a valid search warrant, all evidence and items seized as a result should be suppressed from evidence at trial.

5. Furthermore, the search was illegal as the fruit of the poisonous tree of the illegal wire communication interception orders, pursuant to the authority previously noted herein.

## V. THE ILLEGAL ARREST AND QUESTIONING OF DEFENDANT

1. Once law enforcement entered the residence, Mrs. Royster telephoned Defendant and told him that he needed to come home "because Agent Oliver needed to speak with him." (Vol. IX)

2. Agent Oliver than spoke to Defendant over the phone and told him to come home because he needed to speak with him. Id.

3. As soon as Defendant arrived, he was immediately arrested without probable cause or a warrant. Defendant was told to put his hands on his car, was handcuffed, and led into the residence by officers. Id.

4. Law enforcement searched Defendant's person without a warrant, valid consent, probable cause, exigent circumstances, or any other exception to the warrant requirement. Id.

5. Officers searched his person and seized certain alleged items, including his cell phone and pager. Id.

6. The Defendant expects the Government to attempt to introduce the seized items, and/or photographs or testimony about the items, as evidence against him at trial.

7. Because Defendant's arrest was not pursuant to probable cause or an arrest warrant, the arrest and search of Defendant was the product of the fruit of the illegal search warrant and the illegal wiretap orders.

8. As such, the arrest and search of Defendant were made without independent probable cause, and all items seized from his person should be suppressed from evidence at trial pursuant to the authority previously noted herein.

9. Defendant holds a good faith belief that the contents of the cell phone and pager, including the stored numbers, may have been searched. The search warrant did not provide for seizure of cell phones, pagers, or their contents. Therefore, the cell phone, the pager, and the information from them, were illegally seized pursuant to the authority noted previously herein.

10. Next, without advising Defendant of his *Miranda* rights, while searching the residence, officers began to question Defendant with questions designed to elicit inculpatory responses. In response to this questioning, Defendant allegedly made statements which the Government will most likely seek to introduce into evidence against him at trial.

11. Because these statements were made without the valid waiver of his *Miranda* rights, while Defendant was clearly in custody, they were illegally obtained and should be suppressed from the trial of the case.

12. The next day while in custody, Defendant was placed in a little room and three officers attempted to interview Defendant.

13. Defendant requested an attorney.

14. Instead of immediately terminating the interview, the officers may have continued to question Defendant and/or made statements designed to elicit

inculpatory responses.  In response, Defendant may have made alleged statements which the Government will likely seek to introduce into evidence against him at trial.

15. Because these statements were made without the presence of counsel or waiver of his *Miranda* rights, while Defendant was clearly in custody, they were illegally obtained and should be suppressed from evidence at trial.

16. Movant reserves the right to add and/or supplement the grounds/facts asserted herein either in writing or ***ore tenus*** before the court upon discovery of additional facts and/or information.

WHEREFORE, Defendant respectfully requests this Court to suppress any and all evidence improperly obtained against Defendant in this case.

This 16th day of August, 2007.

*/s Bruce S. Harvey*_____
LAW OFFICES OF BRUCE S. HARVEY
Attorneys for Defendant
Bruce S. Harvey, GA Bar No.  335175
Jennifer S. Hanson, GA Bar No.  001698
K. Julie Hojnacki, GA Bar No. 434391

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:07CR-16-009 (WDO)** |
| | ) | |
| **LEONARD EARNEST ROYSTER,** | ) | |
|     **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day filed the above *Defendant Royster's Particularized*

*Motion to Suppress Evidence and Statements and Brief in Support* by electronically filing

with the Clerk of the Court by using CM/ECF, which will automatically send email

notification of such filing to the following:

> Charles L. Calhoun
> P.O. Box 1702
> Macon, GA 31202-1702
> 478-752-3511
> Email: charles.calhoun@usdoj.gov
> Lead Attorney; Attorney to be Noticed

This 16th day of August, 2007.

> Respectfully submitted,
>
> */s Bruce S. Harvey*
> LAW OFFICES OF BRUCE S. HARVEY
> Bruce S. Harvey, Georgia Bar No. 335175
> Jennifer S. Hanson, Georgia Bar No. 001698
> K. Julie Hojnacki, Georgia Bar No. 434391
> 146 Nassau Street, NW
> Atlanta, GA 30303
> 404-659-4628
> Email: JoyGeske@yahoo.com
> Lead Attorney/Attorney to be Noticed