FILED
U.S. DISTRICT COURT
2007 SEP 27 PM 1: 03

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :  **CRIMINAL NO. 5: 07-CR-0016** |
| | : |
| **v.** | : |
| | : |
| **LEONARD ROYSTER** | : |
| _____ | : |

## MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

I

### BACKGROUND
### THE WIRE INTERCEPTS

Defendant Royster (hereinafter Royster) and thirteen other co-defendants and co-conspirators are the subjects of a five (5) count indictment. The most serious charge, count one, charges Royster and the other named defendants with conspiracy to possess with the intent to distribute more than five (5) kilograms of cocaine during the period from January 1, 2005, up to and including December 30, 2006.

The foundation of the Government's evidence against Royster and Anthony Walker (hereafter referred to as Walker) is contained in the state sponsored wire taps on phones used and or subscribed to by Walker and Royster between September 21, 2006 and December 14, 2006.

The first calls intercepted were from phone numbers (229) 402-7806 and (229)347-1553. The order for intercept was granted on September 21, 2006 and ran for a period of thirty (30) days. These two phones were used by Walker to conduct his drug trafficking activities.

1

At the end of the first thirty (30) days of interception, the case agent sought and obtained a thirty (30) day extension. This order was obtained on October 20, 2006.

A second extension for the two targeted phones was obtained on November 21, 2006. Monitoring and recording of pertinent phone calls from (229)347-1553 ceased on December 5, 2006. Interception of (229)402-7806 terminated on December 20, 2006.

While monitoring calls from the two aforementioned telephones, law enforcement officers learned that Walker had dropped (229)402-7806 and had obtained a new phone number in the name of a female associate. Toll and subscriber information revealed that this phone number was (229)392-9234. Court ordered interception on this phone began on October 24, 2006. Interception was extended for thirty (30) days on November 20, 2006. Monitoring and recording of pertinent calls ceased on November 20, 2006.

Interception of conversation on Walker's two phones led to probable cause to intercept conversations on Royster's cellular phone. This phone was identified as (229)392-6181. Interception began on October 14, 2006. A request for a thirty (30) day extension was granted on November 14, 2006. Interception ceased on this phone on December 14, 2006.

All orders and extensions were obtained by S/A Dell Cole of the G.B.I. from the Honorable Gary McCorvey of the Tift Superior Court.

II

## DEFENDANT'S ALLEGATIONS IN SUPPORT OF THE MOTION TO SUPPRESS

Defendant has asserted a wide ranging attack on the wire intercepts which extend from probable cause for issuance of the intercept orders to challenging the sealing of the tapes. He contends:

2

1. The affidavits in support of the applications and orders for wire intercepts did not allege sufficient probable cause (Defendant's motion, pp. 12, 13);
2. The orders for intercept fail to detail or specify the persons to be intercepted (Defendant's motion, p. 14);
3. Upon information and belief, agents failed to minimize intercepted conversation (Defendant's motion, p. 14);
4. Applications and orders failed to particularly describe the person to be intercepted (Defendant's motion, p. 14);
5. Applications and Affidavits did not allege sufficient showing of necessity (Defendant's motion, p. 15);
6. Case agent failed to seal tapes with in the requisite statutory time period (Defendant's motion, p. 18);

As an adjunct to the issues raised above, Defendant alleges that the "good faith" exception to

the validity of warrants does not apply (Defendant's motion, p. 20).

### III

### DISCUSSION AND CITATION OF AUTHORITY

Royster seeks suppression of intercepted wire communications on Walkers two phones as

well as suppression of communications captured while he was using his cellular phone. Specifically,

he argues that the Government did not meet the statutory requirements of probable cause. An

analysis of the case law for the requirements of probable cause may be helpful in disposing of the

claims raised by Royster.

As a condition precedent to obtaining authorization for a wire tap, Title 18, United States

Code, Section 2518(3) requires:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception...(d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person. 18 U.S.C. § 2518(3)

3

As a threshold matter, an application for a wire tap authorization must be supported by the same probable cause necessary for a search warrant. United States v. Novation, 271 F.3d 968 (11th Cir. 2001); Citing; United States v. Hyde, 574 F.2d 856 (5th Cir. 1978). In this respect, all that is necessary is for the issuing judicial official to make a "practical, common sense decision" about whether the "totality of the circumstances" indicate that the sought for evidence will be obtained Illinois v. Gates, 462 U.S. 213, 238(1983).

When a Title III order has been challenged, the court should consider a number of factors, including the nature of the offense, the length of criminal activity, the nature of the object of the search and whether information provided by confidential or cooperating sources has been corroborated. United States v. Rhynes, 196 F.3d 207, 234 (4th Cir. 1999); and United States v . Ozar, 50 F.3d 1440 (8th Cir. 1995).

In those situations where the Government can link the object of the search to on-going criminal activity, and updates and corroborates information that may be arguably stale, courts will find probable cause. See, United States v. Diaz, 176 F.3d 52, 109 (2d Cir 1999) (pen register data updated and bolstered probable cause by showing extensive use of phone to call criminal associates); United States v. Ozar, 50 F.3d at 1447 (physical surveillance updated and corroborated informant information); United States v. Powell, 903 F.3d 899, 900(2d Cir. 1990); and United States v. Green, 40 F.3d 1167 (11th Cir. 1994).

In determining the value of an informant's credibility, courts are again guided by the "totality of the circumstances" test announced in Illinois v. Gates. The Gates standard only requires that major portions of an informant's statements to law enforcement officers be verified. Gates, 462 U.S. at 246. Particular credibility is afforded to informants who have personal involvement with the criminal activity, over an extended period of time, and who were able to amass a large amount of detailed

4

information. United States v. Carrazana, 92, F.2d 1557, 1564 (11th cir. 1991).

Moreover, when criminal activity, such as drug dealing, is protracted and continuous, it is likely that the passage of time will not dissipate probable case. United States v. Domme, 753 F.2d 950 (11th Cir. 1985). In such cases, it is reasonable to assume that the criminal activity has continued beyond the last date mentioned in an affidavit for Title III and may still be continuing. Id. at 953. "Dropping phones" and toll analysis is addition proof that illegal activity is still taking place. Id. at 954.

In the context of a wiretap, time is said to be less significant because the evidence sought to be seized is not a tangible object which can be easily moved or destroyed. United States v. Boscaro, 742 F.2d 1335, 1346 (11th Cir. 1984).

Finally, a movant seeking to suppress a wiretap based on alleged falsehood, misstatement or omission must comply with the restraints imposed by Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674(1978). A movant seeking to use Franks to challenge an affidavit in support of a wiretap must make a substantial preliminary showing that the affidavit included statements which were either false or were made with reckless disregard for the truth, and that those alleged misstatements were necessary to a finding of probable cause. Id. at 155-156.

In order to mandate a hearing on such alleged efficiencies, a challenger's attack must be more than conclusory and must be supported by an offer of proof. Id. at 171-172.

## B. WALKER WIRE

### 1. PROBABLE CAUSE

On September 16, 2006, S/A Dell Cole of the G.B.I. submitted an affidavit and application for a wiretap on the two phones used by Walker in connection with the distribution of cocaine in the

5

Tifton, Georgia area.

After a discussion of Cole's training and experience, the affidavit chronicled, in detail, the investigation up to September 16, 2006. (Government's Ex. - I.A. - pp. 10-23).

The affidavit contains information which was provided by several informants, including an informant designated as CI 80-672. This informant was initially debriefed by agents on April 1, 2006, roughly five months before the agent's order was obtained (Government's Ex. - I.A.- p.10). During the debriefing, the informant disclosed that he had recent contact with Lorenzo Jackson. As a result of CI 80-672's contact with Jackson, the G.B.I. learned that Jackson was a close associate of Walker who was privy to information about Walker's drug dealings. The informant relayed that shortly before his conversation with Jackson, Walker had obtained 120 kilograms of cocaine for distribution (Government's Ex. - I.A.- p.10). Jackson further advised the informant that Walker routinely sold 50 to 70 kilograms of cocaine at a time in the Tift County area (Government's Ex. - I.A.- p.10).

Efforts on the part of CI-80-672 led to the discovery of two phone numbers which were being used by Walker; (229) 402-7806 and (229) 881-5556 (Government's Ex.-I.A.- p.19).

In order to corroborate the information supplied by CI 80-672, the G.B.I. engaged in several time tested procedures used to guage informant credibility.

First, Agent Cole reached out to Investigator Joe Chestnut. Based on agent Cole's conversation with Investigator Chestnut, he advised Agent Cole that on March 6, 2006, he (Chestnut) had arrested a local drug dealer in Tifton by the name of Reginald Ford (Government's Ex.-I.A.- p.17). Ford had attempted to buy a quantity of cocaine from a cooperating source.

During a post-Miranda interview, Ford reiterated what CI 80-672 had advised agent Cole.

6

Ford stated that Anthony Walker was one of the largest cocaine dealers in the area (Government's Ex.-I.A.- p.12).

In order to take advantage of Lorenzo Jackson's current involvement with Walker, CI 80-672 was used to attempt a meeting between Walker and the informant. To this end, a meeting between the three was set for May 4, 2006, (Government's Ex.-I.A.- p.13).

The plan was for the informant and Walker to travel to the Long Horn restaurant in Tifton. Upon their arrival, Jackson would call Walker who would deliver a quantity of cocaine to the informant (Government's Ex.-I.A- p.13).

As planned, Jackson and the informant traveled to the restaurant. However, after several phone calls by Jackson to Walker, the cocaine was not delivered. Instead, Walker directed the informant and Jackson to another meeting at the Classy 89 Hair Salon in Tifton (Government's Ex.- I.A.- p.14). While at that location, they were met by Jason White who entered the informant's car and sold him the cocaine. (Government's Ex.-I.A.- p.14)

An analysis of call records by the G.B.I. confirmed that (229)402-7806 was in contact with Lorenzo Jackson during the time Jackson and the informant were arranging the drug deal involving Jason White (Government's Ex.-I.A.- p.24).

Therefore, as of May 4, 2006, there was information that Walker was (1) involved in the distribution of cocaine and (2) used (229)402-7806 to distribute cocaine.

In addition, the transaction on May 4, 2006, confirmed and corroborated the information provided by CI 80-672 during the debriefing on April 1, 2006. The transaction also confirmed the information given by Reginald Ford subsequent to his arrest.

However, law enforcement officers did not rest on this information and the transaction on May 4, 2006. They went further.

7

While the drug sale involving Jackson, the informant and White was taking place, law enforcement officers conducted a limited surveillance of the area. As a result of the surveillance, they observed a truck in the area similar to the truck, driven by Walker (Government's Ex.-I.A.-pp.13,14). Walker's presence was later confirmed by Lorenzo Jackson who told the informant that Walker had been parked near the location where the May 4, 2006 sale took place. (Government's Ex.-I.A.- pp.13,14)

This information, though highly probative that Walker was in the drug trade and was using his phone to distribute cocaine, did not satisfy law enforcement. They developed another informant.

On July 6, 2006, Buford Jenkins was debriefed regarding his knowledge and association with Walker. At the time, Jenkins had pled guilty in Federal Court to distribution of cocaine and was cooperating via a written plea agreement (Government's Ex.-I.A.- p.20). Jenkins revealed that Lorenzo Jackson had arranged for him to meet Walker in order to finalize future purchases of cocaine. The meeting was to take place on July 8, 2006 in Tifton, Georgia. (Government's Ex.-I.A.- p. 33) It is significant that the Lorenzo Jackson referred to by Jenkins is the same subject who orchestrated the cocaine sale on May 4, 2006 between CI-80--672, Jason White and Anthony Walker.

A meeting between Jenkins, Jackson and Walker took place on July 10, 2006, as related to law enforcement by Jenkins. According to Jenkins, Walker agreed to sell Jenkins multi-kilogram amounts of cocaine for $20,000.00 per kilogram (Government's Ex.-I.A.-p.21).

In order to confirm that this meeting had taken place, law enforcement officers examined toll analysis for (229)402-7806. Their analysis showed a phone call from the target phone to Jackson's cell phone and from Jackson's cell phone to the target phone close to the time the meeting was said to have taken place (Government's Ex.-I.A.- p. 22).

8

As further proof that Jenkins had met with Walker and Jackson, a monitored and recorded phone call was made by Jenkins to Lorenzo Jackson on August 9. 2006. During this call, plans were made to purchase five (5) kilograms of cocaine from Walker. Jackson told Jenkins that "his man" (Walker) had five kilograms of cocaine which he would sell for $19.000.00 each (Government's Ex.-I.A.- p.32).

A subsequent recorded phone call was made to Jackson on August 9, 2006. Jackson advised Jenkins that Walker had the five (5) kilograms and that "he got so much stuff.......and its good man" (Government's Ex.-I.A.- p.33).

On September 1, 2006, a fourth informant surfaced by the name of Frederick Ferguson. He had been arrested in Tifton, Georgia on September 1, 2006 in connection with the purchase of one (1) kilogram of cocaine. In a post-Miranda interview, independent of information provided by the other informants, he stated that Walker was distributing 50 kilograms of cocaine each month in Tifton, Georgia (Government's Ex.-I.A.- p.35, 36).

Ferguson identified Michael Kinsey as Walker's "right hand man." He also identified Devictor Wilson and Tony Hill as being members of the Walker organization (Government's Ex.-I.A.- pp.35-37). When he needed to contact Walker, Ferguson stated that he used phone number (229)402-7806 (Government's Ex.-I.A.- p.37).

The G.B.I. learned that on July 10, 2006, Walker had "dropped" phone number (229)881-5556 in exchange for (229)347-1553 (Government's Ex.-I.A.- p.34).

As part of the investigation, S/A Cole put together a toll analysis for (229)402-7806 for June 12, 2006, through July 12, 2006 (Government's Ex.-I.A.- p.39). His analysis showed a total of 2000 calls made to or from the target phone. Many of those calls were repeat calls to subjects identified as part of the Walker organization (Government's Ex.-I.A.- p.39).

Analysis of (229)881-5556 for the period between June 12, 2006 and July 7, 206 revealed 1,866 calls to or from known drug traffickers. (Government's Ex.-I.A.- p.39).

An analysis for (229)347-1553 (formerly (229)881-1556) for the period from July 28, 2006 to August 28, 2006, showed 680 calls to and from known drug dealers (Government's Ex.-I.A.- p.61).

The period from August 29, 2006 though September 17, 2006, showed 631 calls to and from (229)347-1553 and 1663 calls to and from (229)402-7806 to targets associated with the Walker organization (Government's Ex.-I.A.- p.39).

Contrary to Defendant's challenge as to the probable cause contained in the wiretap affidavit on September 16, 2006, there is an abundance of probable base on information from informants, a controlled purchase of cocaine, and toll analysis.

There were four informants and one unwitting informant (Jackson) who were intimately aware that Walker was not only selling cocaine, but selling large amounts of cocaine.

The information given by the four informants cannot be considered stale. The proper time to consider whether information is stale would be at the time the Government applied for the intercept order. United States v. Van Horn 789 F.2d 1492(11th Cir. 1986). In cases involving large drug conspiracies, staleness is liberally construed due to the protracted and continuous nature of the illegal conduct. United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984).

The affidavit submitted by S/A Cole on September 16, 2006, set forth a continuing criminal enterprise conducted by Walker and others, which operated over a long period of time before and up to the time the order for intercept was issued.

The affidavit contained current information from four informants, all of whom were involved in the distribution of cocaine in Tifton and who provided detailed information regarding the activities of Walker. Those informants, though interviewed separately and at different times, gave the same

description of Walker as being a multi-kilogram distributor of cocaine.

Their assessment of Walker's activities immediately prior to the September 16, 2006 order is bolstered by the May 4, 2006 incident where Walker, aided and abetted by Lorenzo Jackson and Jason White, arranged for the sale of cocaine to CI 80-672. This sale showed two things: first, Walker was still engaged in the sale of cocaine; second, it showed that the information provided by the informants regarding Walker was not stale but was accurate, current and reliable.

Defendant's claim that the information was stale is further defeated by the meeting between Buford Jenkins, Walker, and Lorenzo Jackson on July 10, 2006, two months before the September 16th order was issued. During this meeting Walker agreed to sell Jenkins multi-kilogram quantities of cocaine for $19,000.00 per kilogram (Government's Ex.-I.A.- p.21). This meeting is irrefutable evidence that Walker persisted in the distribution of cocaine before and up to the time the order for intercept was issued.

Perhaps the most telling evidence that the informant information was not stale or unreliable is contained in the toll analysis conducted by Agent Cole. His analysis of the two targeted phones used by Walker shortly before the order for intercept was sign showed a pattern of repeat calls to and from Walkers phones by known drug dealers in the Tifton, Georgia area. It is generally recognized that a pattern of phone calls between the target of the wire intercept and other co-conspirators, while the illegal conduct is taking place, is a strong indication that the user of the phone is actively involved in illegal conduct. Bascaro, 742F.2d at 1345.

As a corollary to Defendant's staleness argument, he also contends that the affidavit and application in support of the September 16th order did not establish the "reliability and veracity" of the informants (Defendant's motion, p. 13).

An informants credibility or reliability is based on the totality of the circumstances, including

11

the traditional review of the basis of his knowledge and reliability. Illinois v. Gates, 462 U.S. at 246. The Gates standard only requires that major portions of the informant's statement be verified. United States v. Green, 40 F.3d 1167, 1172 (11th Cir. 1994).

In this case, the application in support of the order for intercept was based, in part, on information provided by four separate informants. The significance of the number lies in the fact that each gave basically the same information about Walker independent of each other and at different times. Moreover, the informants gave detailed information about the amount and type of drug being distributed, the location and names of other participants. Information of this sort is termed "self-corrobating and suffices to establish the credibility and reliability of informants." United States v. Smith, 918 F.2d 1501 (11th Cir. 1990).

The credibility and reliability of the information that each informant imparted to law enforcement was corroborated by the case agent. Prior to execution of the wiretap, agents used CI 80-672 to arranged a purchase of cocaine from Walker through Lorenzo Jackson on May 4, 2006.

Additional corroboration is found in the meeting between Walker and another informant (Buford Jenkins) on July 10, 2006. The substance of this meeting involved Walker agreeing to sell multi-kilogram amounts of cocaine to Jenkins for $19,000.00 each. This information mirrors the information about Walker which had been provided by the other informants.

Thus, when the Gates standard is used as a measure, the reliability and credibility of the informants was firmly established in Agent Cole's September 16th affidavit and application.

The last contention on the issue of probable cause relates to Defendant's argument that the affidavit contained information that is "either deliberately false, misleading; or mistaken...." (Defendant's motion, p. 13). As an example to support this issue, Defendant cherry-picked one

statement from an affidavit that is 55 pages long. This is not sufficient.

In Franks v. Delware, 438 U.S. 154, 98 S. Ct. 2674 (1978), the Supreme Court set fourth the standards for considering an attack on the veracity of an affidavit filed in support of a search warrant. The Court stated that:

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegation must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted...is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to on side, there remains sufficient content to the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue."

Franks, 438 U.S. at 171-72, 98 S. Ct. At 2684-85. "In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 156, 98 S. Ct. At 2676.

The first and only alleged misstatement raised by Royster is a comment in the affidavit where Agent Cole remarked, "it was determined that Leonard Royster was one of the major sources of cocaine for Anthony Walker." (Defendant's motion, p.13)

This comment is contained in paragraph three (3) of the affidavit in support of the order to

13

intercept calls on Royster's phone (Government's Ex.-II A-p.5). In support of this conclusion, Agent

Cole specifically stated that this was based on "a court ordered intercept of two cellular numbers of

Anthony Walker." (Government's Ex.-II A- pp. 4,5).

Therefore, there is no basis to conclude that this reference to Royster was false or misleading

as Defendant claims. It was based on Agent Coles assessment of information learned from the

investigation of the phone used by Walker.

Moreover, even if this statement is removed and ignored, it does not cause the rest of that

affidavit to be flawed. By the time the order to intercept Royster's phone had been submitted, law

enforcement had been monitoring the phones used by Walker to transact cocaine. Those calls

provide an abundance of information that Walker and Royster were partners in Walkers enterprise,

as S/A Cole suggested in the comment raised by Defendant.

## 2. NECESSITY

In his motion, Royster contends that the September 16, 2006 affidavit and application does

not establish the requisite "necessity" to support issuance of the order to intercept on Walker's

phones (Defendant's motion, p. 14). Here, Royster failed to offer any specific facts in support of this

claim.

To establish necessity for a wire tap, "a full and complete statement as to whether or not

other investigative procedures have been tried and failed or why they reasonably appear to be

unlikely to succeed..." must be provided. 18 USC§ 2518(1)( c). The affidavit for the application must

simply explain the retroactive or prospective failure of several investigative techniques. United

States v. Cannon, 149 Fed. Appx 937 (11th Cir. 2005). Affidavits should outline the Government's

reasonable, good faith efforts to use other investigative techniques. United States v. Oriakhi, 57 F.3d

1290, 1298 (4th Cir. 1995). Courts recognize that success with one investigative avenue does not

necessarily negate the need for a wiretap. United States v. Canales, 358 F.3d 1221, 1225-26 (9th Cir. 2004). Likewise, courts do not require the Government to take extraordinary steps to exhaust all investigative means before seeking an order for wire intercept. United States v. Van Horn, 789 F.2d. 1492 (11th Cir. 1986). A wiretap order will not be overturned simply because a defense counsel is able to suggest, post factum, some technique that might have been used. United States v. Alonso, 740 F.2d 862, 869 (11th Cir. 1984).

The affidavit submitted by Agent Cole described several alternative investigative techniques that had been considered, tried or failed, including (1) confidential sources, (2) surveillance, (3) pen register and toll analysis, (4) controlled purchases of cocaine and (5) undercover police officers (Government's Ex.-I.A.- pp.44-55).

As Agent Cole outlined in his affidavit and application, these methods were unlikely to reveal the source of Walker's cocaine, the extent of the conspiracy or the location of hidden assets (Government's Ex.-I.A.- p. 55)

Therefore, the G.B.I.'s inability to uncover all conspiracy members and to locate hidden assets militated in favor of a more drastic investigative tool; namely, a wire tap.

3. MINIMIZATION

Defendant alleged on "information and belief" that the monitors sitting on the wire failed to minimize non-pertinent phone calls. There is no basis for this assertion.

On September 22, 2006, S/A Dell Cole conducted a minimization briefing at the DEA-Macon office located in Macon, Georgia. During this briefing, SA Cole read a minimization memorandum that covered all aspects of various types of calls that could be intercepted and during these calls which types should be listened to and marked as pertinent and which calls should be minimized or rendered as privileged. All individuals who served as monitors on the wire tap were

present at this briefing and if not, were required to read the minimization memorandum and sign a sheet detailing that they read and understood this minimization briefing memorandum. The summary reference the aforementioned conduct regarding minimization is mentioned.

S/A Cole also conducted a review for each intercepted cellular number during the course of the investigation reference total number of calls intercepted compared to completed calls with the percentage of completed calls minimized versus the percentage of pertinent calls noted. For cellular number (229)347-1553, a total of 1,789 completed intercepted calls were recorded. Out of these calls, 189 or 11% of the total calls were marked as pertinent, 262 or 15% of the calls were minimized. For cellular number (229)392-6181, a total of 988 completed telephone calls were intercepted. Out of these calls, 450 or 46% of the total number of completed intercepted calls were minimized. 66 calls or 7% of the total number of completed calls were marked as pertinent.

As set forth above, there was an appropriate minimization procedure in effect which was followed by Agent Cole and the other agents monitoring Walkers cellular phones.

### 4. SEALING REQUIREMENT

The order for intercept on phones (229)402-7806 and (229)347-1553 was entered on September 21, 2006 (Government's Ex.-IC- p. 5). Interception began on that date. A thirty day extension was sought and obtained on October 28, 2006. (Government's Ex.-I E- p.1) A second extension was sought on November 21, 2006 (Government's Ex.-I i- p.1). It was granted on November 21, 2006 (Government's Ex.-I k- p.1).

Monitoring and recording of conversations on (229)347-1553 ceased on December 5, 2006 (Government's Ex.-I M- p.3). The tapes were sealed on December 8, 2006 (Government's Ex.-IN-_ p.3). Intercepts on phone (229)402-7806 ceased on December 20, 2006. The tapes were sealed on December 22, 2006. (Government's Ex.-I N- p.3)

16

Admittedly, tapes for (229)347-1553 were not sealed within the two days required by Title 18, United States Code, Section 2518(8)(a). However, this omission does not cause the contents of the conversations to be suppressed. In relevant part, Section 2518(a) provides:

The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his direction. ...The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use of disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom...

The Eleventh Circuit has ruled that recordings are sealed immediately, pursuant to the dictates of Section 2518(8)(a), if they are sealed within one or two days after expiration of the order for wire intercept. United States v. Matthews, 411F.3d 1210 (11th Cir. 2005). Law Enforcement officers may generally wait to comply with this mandate until the expiration of any continuous non-interrupted extensions of the initial order if the extension involves the same phone, same crime and same offender. United States v. Vasquez, 605 F.2d 1269 (2nd Cir. 1979).

In determining whether the Government has given a satisfactory explanation for late sealing, courts consider (1) the reason for the delay, (2) whether there was evidence of any tampering and (3) whether the defendant suffered any prejudice due to the delay and (4) whether the Government obtained a tactical advantage. Jones v. United State, 224 F.3d 1251 (11th Cir. 2000); see also, United States v. Wilkinson, 53 F.3d 757(6th Cir. 1995); and United States v.Maldanado-Riviera, 922 F.2d 934 (2nd Cir 1990).

A delay in sealing of fourteen (14) days was justified where it was shown that the chain of custody was properly maintained. United States v. Cohen, 530 F.2d 43 (1976); Failure to seal for a period of eight days excused where defendant showed no foul play on the part of the Government and where no prejudice to defendant shown or asserted. United States v. McGrath, 622 F.2d 36(2nd

Cir 1980). A delay of twenty days shown to have been satisfactorily explained due to the absence of any evidence that tapes had been sullied. United States v. Mora, 821 F.2d 860 (1st Cir. 1987). A delay of fourteen (14) days did not support suppression where there was no showing of prejudice. United States v. Sklavoff, 506 F.2d 837(5th Cir. 1975).

Under the facts of the present case, Defendant has not asserted that he was prejudiced by the failure to seal the tapes between the end of the wire on December 5, 2006 and the order to seal on December 8, 2006. Further, he has not alleged that this delay was made in bad faith, gave some tactical advantage to the Government or that the integrity of the tapes were somehow compromised. The three (3) day delay was occasioned by the technical and administrative aspects of the wire tap.

During the interception of all target phones, the listening post was located at the Macon Office of the DEA. All of the intercepted oral and electronic communications were originally routed through the main server for the DEA-Atlanta office at the DEA Atlanta Division in Atlanta, Georgia. From this main server and router, the DEA Special Operations Group, who is in charge of wire tap communications, routed the information down to the DEA-Macon office where it was actually intercepted. It was the responsibility of the DEA-Atlanta Special Operations Group to actually interact with the respective cellular carriers for each number coordinating the intercept of the communications, along with being responsible for the original recordings of each cellular number during the total course of the interception for each number. At the conclusion of the interception of each number, DEA-Macon SA Hubert Jordan was responsible for coordinating with the DEA Special Operations Group in Atlanta, Georgia in order to travel to their Division Office at the Richard B. Russell Federal Building in downtown Atlanta and obtain the master recordings. SA Jordan would then transport these master recordings back to Macon, Georgia and meet with GBI-Macon RDEO SA Dell Cole who would then take possession of the master recordings. SA Cole then

18

was responsible for coordinating with Tift County Judicial Circuit District Attorney Paul Bowden who would then coordinate with Tift County Judicial Circuit Chief Superior Court Judge Gary McCorvey in order to arrange a meeting for SA Cole, DA Bowden and Judge McCorvey so that the application to seal the original recordings for each intercept and the affidavit in support of the application to seal the original recordings for each intercept could be signed by SA Cole, DA Bowden and Judge McCorvey. The coordination of the logistics involved with all of the aforementioned individuals and their schedules, along with the actual geographical distance that had to be traveled from Atlanta to Macon to Tifton sometimes precluded the orders and affidavit being sealed within 48-hours. The original recordings were always sealed as quickly as possible depending upon the schedules of all the aforementioned individuals, along with any exigent circumstances associated with the ongoing investigation of Anthony Walker and Leonard Royster that were occurring during the same time frame.

The mechanics of operation and the logistics of obtaining the tapes from Atlanta for transport to Tifton for sealing constitutes a satisfactory explanation for the three (3) day delay in sealing the tapes for (229)347-1553.

Moreover, the chain of custody for the tapes was maintained. They were not altered. The Government did not realize any tactical advantage and Defendant has not alleged any prejudice as a result of the three (3) day delay.

As to tapes for (229)402-7806, the intercept ceased on December 20, 2006 and wire sealed on December 22, 2006. This was done in conformity with Section 2518(8)(a) and the decision in United States v. Mathews, supra.

19

## 5.   ALLEGED FAILURE OF ORDER TO IDENTIFY PERSON TO BE

## INTERCEPTED

Defendant alleged that the orders granting the wire intercept failed to identify the person whose communications were to be intercepted in violation of Title 18, Untied States Code, Section 2518(4). (Defendant's motion, p. 14)

On September 21, 2006, Judge McCorvey entered an order for the interception of calls on (229)402-7806 and (229)347-1553. The order specifically allowed for monitoring and interception of communications by "Anthony Sean Walker and other known and unknown persons ..." (Government's Ex.-I(G)- p.1)

Defendant seems to infer that since he or other co-conspirators were not named in the order, this violates section 2518(4). This contention is without merit.

A similar argument was made in United States v. Doolittle, 507 F.2d 1368 (5th Cir. 1975). There defendants alleged that the application for the wire tap and the order failed to name them as a possible targets.

The Fifth Circuit rejected this argument on several grounds. First, the "defendants neither alleged nor demonstrated any prejudice to them in not being named in the authorization." Id at 1371. Next, the court focused on the fact that all defendants who were intercepted were allowed to listen to the tapes before trial, as if they had been named in the order. Id.

The case concluded with the holding that substantial compliance with the requirements of the Act, and that failure to name other defendants does not render the tapes inadmissable. Id.

Application of the principle announced in Doolittle does not support suppression of the September 21, 2006 order.

20

## C. WALKER WIRE-FIRST EXTENSION

### 1. PROBABLE CAUSE

The authorization for the intercept for phones (229)402-7806 and (229)347-1553 terminated on October 21, 2006. On October 20, 2006, S/A Cole submitted an affidavit and application for an extension of the wire intercepts for both phones. (Government's Ex.-I(F)- p.1)

The legal requirements for a finding of probable cause in the content of this affidavit is the same as that enumerated on pages three (3) through five (5), supra. The Gates decision is the controlling precedent.

In the opening pages of the affidavit, S/A Cole refers to the contents of the wire which had been authorized on September 28, 2006. He states that:

> ... During the course of the court ordered intercept, multiple pertinent calls have been intercepted on both lines helping to identify many of the individuals that Walker is supplying cocaine to ... (Government's Ex.-I(F)-pp.5, 11).

According to S/A Cole, the wire intercepts uncovered ten people who were being supplied with cocaine by Walker. In addition to cocaine traffickers, the wire tap also uncovered other traffickers who were obtaining Ecstasy or marijuana from Walker (Government's Ex.-I(F)-p.11).

The affidavit described numerous calls between Walker and Royster discussing cocaine and payment for cocaine (Government's Ex.-I(F)- pp.11, 12, 13, 14, 16, 19). The affidavit also incorporated the contents of the prior application (Government's Ex.-I(F)- p.30). Agent Cole detailed drug related conversations between Walker and Michael Kinsey (Government's Ex.-I(F)- pp 25,28 and 29) on the targeted phones. Kinsey had been identified by an informant as Walker's "right hand man".

Under the totality of the circumstances test announced in Gates, there was probable cause for the extension on the two subject phones.

21

## 2.   NECESSITY

In the section of the affidavit denoted unavailability and exhaustion of conventional investigative techniques, S/A Cole referred to the information contained in attachment 1 (Government's Ex.-I(F)-p. 30). This attachment is the original affidavit in support of the September 21, 2006 application.

Defendant argues that since no separate section showing necessity was placed in the affidavit in support of the extension, all tapes obtained under the extension should be suppressed. such is not the case.

In the September 21, 2006, affidavit, S/A Cole pointed out that although there were available informants, none could provide detailed information regarding the extent of Walker's organization (Government's Ex.-I B- pp. 45-47). The affidavit also referred to Jason White and Lorenzo Jackson as being close associates of Walker. However, it was not feasible to capitalize on their association with Walker for fear that the investigation would be compromised (Government's Ex.-I B p. 48).

Physical surveillance was also not an option. Walker's residence and the surrounding areas was described as being rural and which did not lend itself to physical surveillance (Government's Ex.-I B- p.49).

Resort to toll analysis and pen registers were performed and referred to. These tools, though helpful, did not provide information regarding the scope of Walker's organization, according to Agent Cole (Government's Ex.-I B- p. 52).

Search warrants and undercover operatives were also considered by Agent Cole (Government's Ex.-I B- p. 52). The lack of information about where Walker was storing and concealing cocaine made search warrants an untenable option. Agent Cole formed the same opinion regarding the use of undercover police officers. According to S/A Cole, Walker had insulated

22

himself from those who were not known to him (Government's Ex.-I B- p. 53). Therefore, employing undercover officers would have been of no avail and could have jeopardized the investigation.

All of these concerns were made known to the court in the first application and affidavit for the extension.

Contrary to Defendant's assertion, the use of facts set forth in the first application and affidavit to support necessity for the first extension was not boiler plate, United States v. Oriaki, 575 F.3d 1290, 1298, (4th Cir. 1995). The necessity section of the September 16th affidavit contained an extensive description of what investigative options had been considered and why those tools were not deemed tenable.

The fact that the first extension relies on those assertions does not cause the first extension to be subject to challenge for lack of necessity. It is the nature of the information that is provided, not the means by which it is incorporated into a subsequent application that is controlling. The fact that the prior application showing necessity had been incorporated by reference is irrelevant. United States v. Dennis, 786 F.2d 1029(11th Cir. 1986).

The naked formality of restating the same information in the request for extension that would, in the context of this case, be identical (factually) in every respect to that presented in the initial affidavit, to the same judge is not a violation of the necessity requirement of Title 21, United States Code, Section 2518.

## 3. MINIMIZATION

It is assumed that the issue raised regarding minimization voiced by Defendant in connection with the September 16, 2006 wire tap is also applicable to the intercepts obtained by the first extension.

In response, the Government incorporates by reference the arguments set forth on page 16 of the foregoing response.

## 4.     ALLEGED FAILURE OF ORDER TO IDENTIFY PARTIES TO BE
## INTERCEPTED

The order for extension dated October 28, 2006 authorized intercept of communication by Anthony Sean Walker and others known and unknown...(Government's Ex.-I G- p.5). Such a description is in accord with the requirements of Section 2518(4).

The Government incorporates by reference and relies on the argument and authority cited on page 24 of this response, particularly the holding in United States v. Doolittle, 507 F.2d 1368 (5th Cir. 1975).

## WALKER INTERCEPT-SECOND EXTENSION

### 1.     PROBABLE CAUSE

The application for a second extension of the wire tap was supported by an affidavit by Agent Cole on November 21, 2006. This affidavit relied on some of the information from the prior affidavits supporting the initial wire tap on Walker's phones (Government's Ex.-I J-pp 10, 11).

The affidavit also contained updated information in the form of drug related conversations between Walker, Michael Kinsey and Saul Falcon (Government's Ex.-I J-pp11-16).

During a November 15, 2006, conversation, Walker and Falcon were heard discussing the purchase of cocaine by Walker from Falcon. This conversation took place on (229)402-7806 (Government's Ex.-I J- pp. 11,12)

In a subsequent phone call between Walker and Michael Kinsey on November 16, 2006, Walker told Kinsey that the "stuff from "Con" are all different." Kinsey responded that one of his was about twenty-four short and was wrapped in black with grease on it (Government's Ex-I J- p.

24

13). This call was also recorded on (229)402-7806.

Later, on November 16, 2006, Kinsey and Walker were heard discussing splitting a large quantity of marijuana "down the middle." (Government's Ex.-I J- p.15).

Pertinent calls were also intercepted on (229)347-1553 and cited by Agent Cole in support of the second extension.

On November 15, 2006, conversation was intercepted between Walker and "UNC", Walker stated that he had first gotten "five dots" (Government's Ex.-I J- p.16). Agent Cole had previously determined that "UNC" was a nickname for Leonard Royster and that five dots referred to five kilograms of cocaine (Government's Ex.-I J-p.17)..

On November 17, 2006, an unknown male was intercepted. The unknown male told Walker that he needed to "get some, but was waiting on someone to get their money" (Government's Ex.-IJ-p.18).

In a conversation between Walker and Royster on November 17, 2006, Royster told Walker that "they were getting ready to pick that up." Agent Cole interpreted that this related to the shipment of drug proceeds to California (Government's Ex.-I J- p.19).

Surveillance was immediately set up on Royster's residence. As a result of this surveillance, Royster was seen meeting with a truck driver at the pilots truck stop in Tifton. A stop of the truck after it had left the truck stop uncovered $828,970.00. The driver admitted that he had obtained the money from a black male and was instructed to take it to California (Government's Ex.-I(J)- pp 20, 21).

The contents of the recorded phone calls on (229)402-7806 and (229)347-1553 satisfy the probable cause requirements of 18 United States Code Section 2518(1)(b) and the standard set forth in the Gates decision.

25

In order to avoid needless repetition of case authorities on this issue, the Government asks the court to adopt and apply the line of cases and opinion on page sixteen (16) of this response.

Moreover, since the affidavit in support of the second extension is primarily based on the intercepts from the first extension, there is no issue as to reliability of informants or staleness.

2. NECESSITY

In the necessity portion of the affidavit, S/A Cole referred the Judge to the necessity section of the original affidavit submitted on September 21, 2006. (Government's Ex.-I(J)- p.21). The Affidavit incorporated by reference the reason why certain investigative procedures would not have been fruitful if attempted.

The fact that the necessity section in support of the second extension relied on the contents of the initial application does not establish that there was no showing of necessity for the second extension. See United States v. Dennis, supra at 1029. The Government relies on and adopts the authorities and analysis stated on page 15, supra.

3. MINIMIZATION

As is the case with Defendant's prior minimization challenge, it is asserted based on "information and belief."

The Government submits that proper procedures were in place and used by the monitoring agents. As a legal and factual predicate the Government asks the court to adopt the authority and reasoning set forth on page 16 of this response.

4. ALLEGED FAILURE OF ORDER TO NAME PERSON TO BE INTERCEPTED

The order authorizing the second extension gives permission to intercept Anthony Sean Walker and other known and unknown persons...(Government's Ex.-I K- p.20). This order is identical to the others obtained in connection with the initial order and the first extension.

26

The Government submits that the order is in compliance with Title 18, United States Code, Section 2518(4). In this regard, the authorities referred to on page 20 of this response are incorporated by reference.

## WALKER PHONE: (229) 392-9234

### 1. PROBABLE CAUSE

While monitoring calls from (229)402-7806, law enforcement agents learned that Walker had dropped this phone and had started using (229)392-9234 (Government's Ex.-I A- p. 12). An affidavit in support of an order to intercept calls on this phone was submitted by S/A Cole on October 20, 2006 (Government's Ex.-I P- p.1).

In this affidavit, S/A Cole relied on some of the information contained in the September 16, 2006 affidavit. A copy of the prior affidavit was attached to the affidavit as an attachment (Government's Ex.-I P- p. 29). The affidavit cites a number of drug related calls between Walker and other co-conspirators.

During a conversation between Walker and an unknown male on September 23, 2006, on (229)347-1553, Walker remarked "that the stuff looked good, but it did not get solid" (Government's Ex.-I P- p. 11). He further remarked that he "did four of them three or four days ago and it just did not get there."

As the conversation continued, Walker told the unknown male that he charges "$87.00 for half a pie and that he was only making $400.00 on each one." (Government's Ex.-I P- p. 12).

A similar discussion took place between Walker and Royster on September 26, 2006 on one of Walker's phones. In that conversation Walker told Royster to give him "five more because he will sell these at seventeen." Royster responded, "O.K. but you ain't going to make nothing on that." (Government's Ex.-I P- p. 13).

27

There were additional drug related calls between Walker and Royster between September 26, 2006 and October 12, 2006 (Government's Ex.-I P-p p. 15-25).

On October 19, 2006, officers intercepted a call between Walker and a female identified as "Shameka." During the conversation, Walker asked the female about her location. She replied that she was leaving the ALLTell store where she ahd left $400.00 for the phones (Government's Ex.-I P-p. 10).

Subscriber records from ALLTell revealed that cellular phone number (229)392-9234 had been obtained on October 19th in the name of "M" with a residence of 113 Self Street in Tifton, Georgia. Law enforcement officers had previously confirmed that his was the address of Anthony Walker.

Evidence that Walker had dropped (229)392–6181 and obtained a new phone is contained in a conversation between Walker and Royster on October 23, 2006. In this conversation Walker asked if Royster had spoken to "Cuz." Royster stated that he had not. Walker then informed Royster that he was getting rid of his 402 number. Royster replied that he would go ahead and lock it in (Government's Ex.I P- p. 11).

The reference to "new number" meant phone number (229)392-9234.

Based on the totality of the circumstances as outlined in S/A Cole's affidavit, with great weight being given to the dropping of one phone and obtaining (229)392-9234, there was probable cause to believe that this "new phone" would be used by Walker to continue the distribution of illegal drugs.

Further, given the fact that the affidavit is based on the contents of the recorded calls there is no issue regarding staleness or the veracity of any informants.

28

## 2. NECESSITY

As is the case with the affidavits for the extension of orders on (229)402-7806 and (229)347-1553, the necessity section of the affidavit for (229)392-9234 referred the reviewing Superior Court Judge to the necessity section of the original affidavit (Government's Ex.-I P- p. 14).

Based on the argument and citation of authority set forth supra, this is not a basis to suppress the contents of (229)402-7806. The Government adopts and incorporates by reference the argument and case authority previously cited.

## 3. MINIMIZATION

Defendant's assertion that on "information and belief" there was no minimization employed during the monitoring is first addressed on page 16 of this response. The case agent established appropriate minimization procedures during all of the intercepts, including (229)392-9234. The Government respectfully asks the court to consider the arguments and authorities cited on page 16 which are adopted and incorporated by reference herein.

## 4. ALLEGED FAILURE OF ORDER TO STATE PARTIES TO BE INTERCEPTED

The order granting the application for wire intercept was entered by Judge McCorvey on October 24, 2006 (Government's Ex.-IQ- p. 5). In the order the court gave authorization to intercept "Anthony Sean Walker and other known and unknown person conspiring with him (Government's Ex.-IQ-p. 1).

This description adequately satisfied the statutory requirements of Title 18, United States Code, Section 2518(4)(a). Since this issue is identical to those raised by Defendant in connection with the orders on Walker's phone, the Government asks the court to consider the argument and case authorities referred to herein which are incorporated by reference.

29

## REQUEST FOR EXTENSION

In order to proceed with the investigation of the activity occurring on (229)392-9234, S/A

Cole submitted an affidavit in support of an application for a thirty (30) day extension.

(Government's Ex.-I T- p.1). The affidavit incorporated the affidavit submitted on September 16,

2006. (Government's Ex.-I T- p.8). It also included current information about Walker's drug dealing

activities based on the contents of intercepts from (229)392-9234.

### 1. PROBABLE CAUSE

S/A Cole noted that prior to the end of the initial order, the subject's phone had accumulated

152 pertinent calls (Government's Ex.-I T- p.9). A sample of some of these calls were outlined by

Agent Cole.

In a recorded call on November 17, 2006, Walker asked Royster if everything had gone

through. Royster responded that he was getting ready to "drop the change" (Government's Ex.-I T-

p.10). S/A Cole interpreted this conversation to refer to attempts by Walker and Royster to transport

drug proceeds from Tifton to California via tractor trailer truck (Government's Ex.-I T- p.10).

His interpretation was confirmed on November 17, 2006 when agents observed Royster

meeting with a truck driver in Tifton, Georgia. Shortly after the meeting, law enforcement officers

stopped the truck and uncovered $828,970.00 (Government's Ex.-I T- p.11).

The affidavit also contains drug related conversations between Walker and unknown males

(Government's Ex.-I T-p.13, 14).

The contents of these calls, based on the totality of the circumstances, establishes probable

cause to conclude that the phone was continuing to be used to distribute cocaine by Walker and

Royster.

## 2. NECESSITY

The affidavit in support of the extension does not contain a section explaining the need for the extension. Instead, Agent Cole referred Judge McCorvey to the necessity section in the affidavit presented to the court on September 16, 2006 (Government's Ex.-I T- p.15).

The Government has previously presented argument and case authority which states that incorporating the necessity section of a prior application, on the same subject, to the same Judge, does not violate the necessity requirement of Section 2518(3)( C).

It is respectfully requested that the court consider these arguments and authorities in resolving this issue.

## 3. MINIMIZATION

According to S/A Cole's affidavit in support of the extension, 152 pertinent phone calls were recorded from the target phone. He further stated that a total of 58 calls were minimized from a total of 797 calls (Government's Ex.-I T- p.9).

The minimization procedures has been set forth on page 16 of this response , along with supporting authorities. It is requested that the argument stated therein be considered in resolving this issue.

## 4. ALLEGED FAILURE OF ORDER TO STATE PERSON TO BE INTERCEPTED

In his order granting the application for the extension, Judge McCorvey gave permission to intercept "Anthony Sean Walker and other known and unknown person conspiring with him..." (Government's Ex.-I U- p.1).

This description fully complied with the requirement of Section 2518(4). This issue has been addressed in other sections of the Government's response. To avoid redundancy, it is requested that the court consider the argument and cases citations and incorporate both by reference.

31

## 5.    SEALING

The court ordered intercept on (229)392-9234 ended on December 20, 2006. The tapes were not sealed until December 22, 2006. Since they were sealed with in the 48 hour window imposed by Section 2518(8)(a) and the legal principles announced in United States v. Matthew, 431 F.2d 1296(11th Cir. 2005), sealing of tapes within one or two days of expiration of order is permitted.

## ROYSTER'S PHONE (229)392-6181

### 1.    PROBABLE CAUSE

On October 16, 2006, S/A Cole submitted an affidavit in support of a request to intercept calls on (229) 392-6181 (Government's Ex.-II A- p.1). Subscriber information showed that the phone was listed to Leonard Royster of L & R Trucking at 3122, 6th Avenue in Tifton, Georgia (Government's Ex.-II B- p.5).

The standard to determine whether probable cause exists is the same as that previously referred to. The totality of the circumstance suggests that the target phone was being used to carry-out a drug trafficking offense. See Gates, 462 U.S. at 238, supra.

According to Agent Cole's affidavit, probable cause was based on a series of phone calls between Walker and Royster from September 26, 2006 to October 6, 2006 (Government's Ex.-II B-pp. 15-25).

On September 26, 2006, a call was intercepted from Walker's phone to (229)392-6181. During the call, Walker told Royster that "he brought me the bread and I'm fixing to go count it now" (Government's Ex.-II B- p.17).

Later the same day, Royster called Walker from the same cell phone and related that he would be "out that way anyway since I'm going to throw out" (Government's Ex.-II B- p.18).

A call was placed by Royster to Walker on October 3, 2006, on the target phone. Walker told

32

Royster he was cooking for "five dots" (Government's Ex.-II B- p.15). The agent interpreted this to mean five kilograms of cocaine (Government's Ex.-II B- p.19).

Royster placed a second call from the target phone on October 3, 2006 to Walker. In that conversation, Walker told Royster that "he may need him because old boy's people just called..." (Government's Ex.-II B- p.20).

The following day, October 4, 2006, Royster called Walker from (229)392-6181. Walker told Royster that he had "two dudes who wanted one a piece and I ain't got nothing solid. All I got is broke" (Government's Ex.-II B- p.20).

Several days later law enforcement officer intercepted a call from Walker to Royster at the target phone. During the conversation, Walker asked Royster "How many are left" (Government's Ex.-II B- p.25). Royster was heard to respond, "It has to be about 2-0." This was interpreted to mean 20 kilograms of cocaine (Government's Ex.-II B- p.25).

The affidavit also details conversations on (229)392-6181 where Walker voiced a great deal of concern to Royster about a surveillance helicopter which had flown over Walker's house and was making him extremely nervous (Government's Ex.-II B- p.22).

Before the conversation ended, Royster asked Walker if he was going to get rid of the 78 number. This was a reference to (229)402-7806 (Government's Ex.-II B- p.23). Walker responded that he intended to get rid of the number but had not gotten around to it (Government's Ex.-II B-p.23).

A review of the calls between Walker and Royster on the target phone is evidence that both men were involved in a conspiracy to distribute cocaine. Therefore, under the principles announced in Gates, there was probable cause for Judge McCorvey to issue an order approving intercepts on Royster call phone.

## 2.    NECESSITY

In the necessity section of the affidavit, S/A Cole outlined the following procedures as having been considered, but rejected:

1.    Confidential informants
2.    Interviews of associates
3.    Physical surveillance
4.    Review of phone records
5.    Search Warrant
6.    Undercover operations
7.    Grand Jury Subpoenas
8.    Financial inquires

After these had been listed, Agent Cole went on to describe why he felt that each would not be successful given the nature of the investigation.

Informants were rejected because those whio were available could not disclose the hierarchy of the organization (Government's Ex.-II B-p.29). Interviewing associates would not have been fruitful because of fear of compromising the investigation (Government's Ex.-II B-p. 31). Physical surveillance, due to the location of Royster's residence would not have been successful (Government's Ex.-II B-pp. 31, 32). Toll records were eliminated because they not give the substance of the conversations. S/A Cole determined that search warrants would not have been helpful because there was information that Royster did not keep drugs at his residence (Government's Ex.-II B-p.34). The closed nature of the conspiracy did not make the use of undercover officers a viable alternative (Government's Ex.-II B-p.35).

These were the chief investigative tools cited by Agent Cole. He also gave consideration to financial inquires and use of grand jury subpoenas. Though helpful, neither could provide the type of information regarding the operation of the Walker/Royster organization (Government's Ex.-II B-p.35).

The requirements of necessity have been set forth in great detail on page 14 of this response. For the sake of judicial economy, it is requested that the court adopt and consider the cases and arguments previously stated on page 14 regarding necessity.

3. MINIMIZATION

The minimization procedures employed by the case agents and monitors were the same as those used and applied during intercepts on Walker's phones. Therefore, the Government ask the court to consider the arguments and authorities cited on page 16 of this response as it relates to whether proper procedures were in effect and used.

4. FAILURE TO STATE PARTIES TO BE INTERCEPTED

Judge McCorvey entered an order to intercept calls on (229)392-6181 on November 14, 2006 (Government's Ex.-II.G). In the order, the Judge gave authorization to intercept calls made by or to Leonard Royster and other known and unknown persons conspiring with him.

The argument regarding the alleged failure to state the identity of persons to be intercepted on this phone is the identical argument made by Defendant in connection with the orders and extension orders on the Walker phones. Therefore, the Government asks the court to consider the cases and argument set fourth on page 20 of this response in resolving this issue.

EXTENSION OF (229)392-6181

1. PROBABLE CAUSE

On November 14, 2006, S/A Cole submitted an affidavit in support of an extension on the subject phone. In support of the affidavit, S/A Cole referred the Judge back to the contents of the October 16, 2006 affidavit. (Government's Ex.-II F-p.10).

In addition, the affidavit detailed a number of drug related calls involving Royster, Walker, and unknown parties. During a conversation between Royster and Walker on November 6, 2006,

35

Walker told Royster that he had a person who wanted six but he only had five. Walker ended the conversation by asking Royster if he had wrapped any of the paper yet. Royster responded, "no, not yet." (Government's Ex.-II F-p.13). Walker stated that he had seventy more and he was trying to make it easier on Royster. The agent interpreted this conversation to mean packaging of drug money for shipment to California (Government's Ex.-II F-p14).

During a phone call intercepted on November 4, 2006, an unknown female asked Royster if she could get "four of them." (Government's Ex.-II F-p.11). Later the same day, Royster told an unidentified female that he had "those parts that she had ordered."(Government's Ex.-II F-p.11). On November 11, 2006, an unidentified female was called by Royster from (229)392-6181. The female told Royster that she had been trying to reach him all day and that she needed "three of them today." (Government's Ex.-IIF-p.15).

The conversation between Royster and Walker, and Royster and the unknown female, based on the "totality of the circumstances test, satisfied the probable cause requirement for the issuance of the extension.

## 2. NECESSITY

S/A Cole referred Judge McCorvey to the necessity section of the initial application (Governments Ex.-I F-p.16). The various investigative procedures considered and rejected by Agent Cole in the initial application have been addressed on page 15 of this response. It is respectfully requested that the court adopt the arguments on authority previously stated..

## 3. MINIMIZATION

According to Agent Cole, a total of 853 calls were intercepted. The number of completed calls was 484. Of that number 191 were minimized as of October 11, 2006 (Government's Ex.-II F-p.10).

36

The minimization procedures described and set forth on page 16 of this response were utilized. Therefore, it is requested that the court consider the argument and cases cited on page 16 of this response in resolving this issue.

## 4. SEALING REQUIREMENT

The tapes which resulted from the intercepts was ordered sealed on December 20, 2006 (Government's Ex.-II I-p. 3). The order granting the extension terminated on December 14, 2006 (Government's Ex.-II G-p.4). There was a delay of six (6) days between termination of the order for extension and the date the tapes were actually sealed.

This issue has been addressed on pages 17-20 of this response. It is respectfully requested that the court consider the reason for the delay referred to in those pages as well as the case law cited therein.

## C. APPLICATION OF LEON

Defendant contends that the Good Faith exception in United States v. Leon, 468 U.S. 897(191984), does not apply to wire taps. He is mistaken.

The exclusionary rule acts as a deterent to willful unlawful police conduct that violates individual rights. The Eleventh Circuit proved in United States v. Malekzadeh, 855 F.2d 1492(11th Cir. 1988) that the exception to the rul announced by the Supreme Court in Leon can be correctly applied to Title III intercepts. See also United States v. Moore, 41 F.3d 370 (8th Cir. 1994) (Leon good faith doctrine applies to suppression issues under subsection of federal wire tap statute governing lawfulness of interception of wire or oral communication). The issue, as described by the court in Malekzadeh, turns on whether the purpose of the exclusionary rule would be served by applying it in a particular case. Id. At 1497. "If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be

said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. quoting United states v. Peltier, 422 U.S. 531, 542 (1975).

Respectfully submitted this 27TH day of September, 2007.

MAXWELL WOOD
UNITED STATES ATTORNEY

BY:    s/CHARLES L. CALHOUN
       BAR NO. 102875
       ASSISTANT UNITED STATES ATTORNEY
       United States Attorney's Office
       Middle District of Georgia
       P.O. Box 1702
       Macon, Georgia 31202
       Telephone: (478) 752-3511
       Fax Number: (478) 621-2655

## CERTIFICATE OF SERVICE

I, Charles L. Calhoun, Assistant United States Attorney, hereby certify that on

September____, 2007, I electronically filed the within and foregoing **MEMORANDUM OF LAW**

## IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO

**SUPPRESS** with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> Mr. Bruce Harvey
> Attorney at Law
> 146 Nassau Street, N.W.
> Atlanta, GA 30303

MAXWELL WOOD
U.S. ATTORNEY

BY:     s/CHARLES L. CALHOUN
        BAR NO. 102875
        ASSISTANT UNITED STATES ATTORNEY
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Georgia 31202
        Telephone: (478) 752-3511
        Fax Number: (478) 621-2655