**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:07-CR-16-009 (WDO)** |
| | ) | |
| **LEONARD EARNEST ROYSTER,** | ) | |
| **Defendant.** | ) | |

### DEFENDANT ROYSTER'S OBJECTIONS TO THE COURT'S ORDER

COMES NOW the Defendant Leonard Earnest Royster (hereinafter "Royster"),

by and through undersigned counsel, and files these written objections to the Court's

Order (hereinafter "Order").  Royster shows as follows:

1.  Defendant incorporates by reference herein his Motion to Suppress Evidence and

    Statements and Brief in Support, (Doc. 270),[1] and his Opening Memorandum in

    Support of His Motion to Suppress Evidence. (Doc. 387)[2]

2.  Defendant objects to the Order not making findings of fact and law consistent

    with his Motion to Suppress with Brief in Support and his Opening Memorandum

    in Support of His Motion to Suppress Evidence. <u>See</u> (Doc. 270 & Doc. 387)

---

[1]  All references to Defendant's Motion to Suppress are hereinafter referred to as "(Doc.
270, [at page number(s)])".

[2]  All references to Defendant Royster's Opening Memorandum in Support of His
Motion to Suppress Evidence are hereinafter referred to as "(Doc. 387, [at page
number(s)])".

3. Defendant objects to the Order that defendant's motions to suppress evidence and statements be denied in part. (Doc. 399)[3]  The Order denied Royster's motion to suppress evidence resulting from the wiretaps on three of Anthony Walker's telephones (229-347-1553; 229-402-7806; 229-392-9234) on which Royster was allegedly captured.  The Order denied Royster's motion to suppress evidence seized as a result of law enforcement's search of Royster's residence at 3101 Third Avenue.  The Order granted Royster's motion to suppress evidence obtained from the wiretap on Royster's telephone (229-392-6181). <u>See</u> Objections two through fourteen, below.

4. Defendant objects to the Court permitting the Government to disregard the Court's order on October 18, 2007, which directed the Government to provide admissible evidence in support of its contention that the minimization and sealing procedures were complied with the law within seven days. (Doc. 372)  The order stated, "The Court therefore orders the Government to present any evidence it has within seven days of (1) law enforcement's efforts to minimize the interception of calls unrelated to the investigation, and (2) the logistical challenges that caused the delay in sealing the tapes of the intercepted conversation." <u>Id.</u>  No evidence was filed by the Government within the seven days time period or even prior to the hearing on the motion to suppress. Over objection, the Court nevertheless permitted the Government to present witnesses at the hearing regarding the issues related to minimization and sealing.  The Court also used documents consisting of

---

[3]  All references to the Court's Order are hereinafter referred to as "(Doc. 399 at [page number(s)])".

affidavits and applications when making its findings of fact in the Order. <u>See</u> objection five, <u>below</u>.

5. Defendant objects to the Order adopting as findings of fact the information in the applications and affidavits for the wiretaps for Walker's telephones (229-347-1553; 229-402-7806; 229-392-9234) when the applications and affidavits were not admitted into evidence at the motion to suppress hearing and when the Order provides no citations from which the Court made these conclusions.[4] (Doc. 399, 2-9, 11-12, 16-19, 22-25, 30-31)  Defendant also objects to the Order's findings of fact for the wiretap on Royster's telephone. (Doc. 399, 10-11, 18-19)   This evidence was not presented by the Government at the hearing and Defendant had no opportunity to cross-examine the purported evidence.  The Government focused on addressing only two issues at the hearing: whether the wiretaps were properly minimized and whether the wiretaps were properly sealed.  Further, Defendant will point the Court to a critical discrepancy between what the Order alleges is stated in the affidavits and what is actually stated in the affidavits.  For example, the Order states that on November 17, 2006, "Defendant Royster spoke with Walker on the 229-347-1553 number and told him they were 'getting ready to pick that up,'" to which the Order alleged "Agent Cole believed this to refer to

---

[4]     At the hearing on the motion to suppress, Defendant objected to the Court's consideration of the affidavits and applications in ruling on his motion to suppress. The Court alleged he could consider documents in the case file, even though they were not admitted into evidence.  The Government merely attached the documents to their reply motion or made reference to them, but never moved to admit them into evidence prior to the hearing or at the hearing.

the shipment of drugs from California." (Do. 399, 9; Tab J, p. 19)[5]  However, a

clear reading of the affidavit does not say that this was Agent Cole's

interpretation of what they were picking up.  Instead, the affidavit states that the

Affiant interpreted this "getting ready to pick that up" to mean "pick up the

money." (Tab J, p. 19)  This is just one example of why Defendant Royster

objects to the Order's findings of fact.

6.  Defendant objects to the Order's finding that the conversations described in the

affidavits in support of the applications for the wiretap warrants were in "code"

and that the Court found the Agent's interpretations of the conversations to be

reasonable. (Doc. 399, 2, n. 2)  The Order alleges the Court "reviewed . . . the

content of the conversations." Id.  This statement provides Defendant with no

guidance as to what the Court reviewed, which telephone calls the Court is

referring to, and from which affidavit the calls were referenced and interpreted by

Agent Cole.  This could be interpreted to mean at least three things, either: 1) the

Court listened to the actual recordings, or 2) the Court read the written

descriptions/notations made by law enforcement monitors of what they believed

the conversations meant, or 3) the Court simply reviewed the affidavits comparing

what the affiant alleged were the contents of the conversations and what the

---

[5]  All references to the affidavits in support of Walker's wiretaps are herein referred to
as follows: (1) the September 21, 2006 affidavit for (229-347-1553) and (229-402-
7806) is referred to as "Tab B, [page number]," (2) the October 20, 2006 affidavit in
support of the first extension for (229-347-1553) and (229-402-7806) is referred to as
"Tab F, [page number]," (3) the November 21, 2006 affidavit in support of the second
extension for (229-347-1553) and (229-402-7806) is referred to as "Tab J, [page
number]," (4) the October 24, 2006 affidavit in support of (229-392-9234) is referred
to as "Tab P, [page number]", and the November 29, 2006 affidavit in support of the
first extension for (229-392-9234) is referred to as "Tab T, [page number."

affiant interpreted the alleged conversations to mean. If the Court listened to the recordings, we do not know which ones were listened to; there were hundreds if not thousands of telephone calls recorded in total, several hundreds alleged to be pertinent, and several telephone calls referred in the affidavits for Walker's telephones that were simply not in the record or provided in discovery. See, e.g. (Tab B, p. 32) (where a three-way call was made by a cooperating individual to an individual allegedly associated with Walker with Agent Cole "listening and recording this phone call.") Id. Thus, the Court's blanket adoption of the Agent's interpretations of the conversations in "code" provides credence to all of the conversations alleged in the affidavit which most likely were not reviewed by the Court. Further, the Court made this adoption of all of the affiant's interpretations of any and all alleged conversations in "code" in the affidavits without the affidavits being admitted into evidence and without Defendant's ability to cross-examine the affiant on the contents of the recordings. See Objection # 5 above. Thus, the Court made its finding of whether the affidavits provided probable cause based on hearsay and evidence not admitted into the record.

7. Defendant objects to the Order's findings that the "confidential informants" relied on in the wiretap applications were credible. (Doc. 399, 15) The Order refers to CI 80-672, a confidential informant later identified as Christopher Hall, who received a departure from sentencing guidelines pursuant to Section 5K.1 for cooperating with the Government. (Doc. 289, 1; Doc. 289-2, 1) The affidavit for the first wiretap on Walker's telephones stated that CI 80-672 "**has provided Affiant with detailed information** regarding some of Anthony Walker's vehicles

and **day to day activities**." (Tab B, p. 40)  Then just five pages later, under

Section Eight titled, "Unavailability and Exhaustion of Conventional Investigative

Techniques" the affidavit states, "Affiant **has not been able to develop**

**informants who can provide current, up to date information on the day-to-**

**day activities** of the organization." <u>Id.</u> at p. 45.   There were other "confidential

informants" from which information was alleged in the Walker affidavits which

may not have been revealed.[6]  For example, the affidavit refers to a "Mid-South

Narcotics Task Force CI" who is a different CI than CI #80-672.  No evidence has

been presented on this informant's reliability or veracity.  Further, information

concerning Source 1, the informant referred to in the warrant application and

affidavit for Royster's residence, has not been disclosed to Defendant.  Therefore,

Defendant also objects to the Order's finding that Defendant's Motion for

Disclosure (Doc. 271) is denied as moot. (Doc. 399, 44)

8.   Defendant objects to the Order finding that the affidavits provided probable cause

for the orders to intercept communications on Walker's and Royster's telephones.

(Doc. 399, 15-25)  Again the Order adopts the affidavits' allegations that Walker

was involved in selling multiple kilograms. (Doc. 399, 16-17, 19)  However, the

affidavits could not allege that law enforcement had observed Walker or Royster

---

[6]   The only other informant the Government revealed was an individual by the name of
Philip Colon McNeal.  However, the only information provided by the Government
on this individual consisted of a sentence revealing his name, stating, "Another
informant utilized during the investigation is Philip Colon McNeal.  A copy of his
records check is attached." (Doc. 289, 1)  The "records check" appears to be Mr.
McNeal's GCIC, in which the printout is illegible and appears to be missing data.
Thus, there is no discovery about which information alleged in the affidavits
corresponds to information provided by Mr. McNeal, and no information on his
veracity or reliability.

directly involved in any drug transaction. Id.  As for Royster's telephone, the
Order merely re-alleges conversations between Royster and other individuals and
what Agent Cole interpreted the conversations to mean. (Doc. 399, 18-19)  The
Court also cites United States v. Malekzadah, 855 F.2d 1492, 1497 (11th Cir.
1988), for the proposition that the Eleventh Circuit has applied the good faith
exception to electronic surveillance or Title III wiretaps.  However, in United
States v. Ward, 808 F.Supp. 803 (11th Cir. 1992), the Eleventh Circuit called into
question the holding of Malekzadah, and in fact held that the good faith exception
did not apply to wiretaps in that case. Id. The Court explained that the good faith
exception was for circumstances where an officer acts in reasonable reliance upon
a facially valid warrant that is approved by a magistrate, but is later held not to be
supported by probable cause. Id. at 808. Title III provides under 18 U.S.C. § 2516
that only specific attorneys at the highest levels of the Justice Department who are
legally trained and are familiar with Title III provisions can authorize wiretap
applications. Id.  In this case, Paul Bowden, District Attorney for the Tift Judicial
Circuit, signed under oath the applications for all the wiretaps.  In Section 2518,
Title III provides for a statutory remedy of excluded "unlawfully intercepted"
communications. Id. at 807.

In suppressing the wiretap, the Court in Ward held:

> Permitting the Government to proceed in this instance without
> sanction for the overinclusive applications and intercepts offers no
> incentive for the Government to fulfill its responsibility to comply
> from the outset with a central and functional provision of Title III.
> Suppression, on the other hand, would serve the deterrent purpose
> of the Title III exclusionary rule by placing the initial burden of
> ensuring compliance with the statute where it belongs: on the
> Justice Department. Id. 808.

Therefore, this Court should adopt the holding of <u>United States v. Ward</u>, 808

F.Supp. 803 (11th Cir. 1992) and <u>United States v. Rice</u>, 478 F.3d 704, 711 (6th Cir.

2007), and hold that the good faith exception does not apply to the wiretaps in

question.

9.  The Defendant objects to the Order's finding that the affidavit met the necessity

requirement under 18 USC 2518(1)(c), 2518(3)(c). (Doc. 399, 21-25)  According

to the affiant, CI 80-672 "provided Affiant with detailed information regarding

some of Anthony Walker's vehicles and day to day activities," including

information that "his cocaine distribution network is very specific and involves

information that only very few people including SA Cole are aware of." (Tab B,

p. 40)  Then just five pages later, the affidavit states, "Affiant has not been able to

develop informants who can provide current, up to date information on the day-

to-day activities of the organization." <u>Id.</u> at p. 45.   The affiant also insisted that

because the confidential informant(s) could not identify "<u>all</u>" of the individuals

associated with Royster and Walker, they would not suffice. <u>Id.</u> The informant, CI

#80-672, was allegedly privy to information from Lorenzo Jackson, one of the

alleged associates of Walker and Royster. <u>Id.</u> at 13-14.  In fact, a controlled buy

was set up between the informant and Walker through Jackson.  Law enforcement

purportedly identified Jason White, an alleged additional associate of Walker and

Royster, and learned information about White through his tag number.  <u>Id.</u>  The

mere assertion that the informant could not provide information on <u>all</u> of the

individuals involved omits the extent to which the informant could have been

successfully employed by the Government in gathering evidence against

Defendant. Here, the informant obtained information on another individual allegedly associated with Walker and Royster on law enforcement's first attempt of contact through a controlled buy. Therefore, the necessity requirement was not met. See United States v. Blackmon, 273 F.3d 1204, 1209 (C.A. 9th Cir. 2001) (the statement "that the cooperating sources 'only possess limited knowledge concerning the scope of the criminal enterprise'" is untrue and omits the extent to which the sources could have been used in gathering evidence against Blackmon).

10. Defendant objects to the Order that minimization requirements were met by law enforcement. See (Doc. 399, 25-28) The burden is on the Government to show proper minimization requirements were met under 18 USC 2518 (5). (Doc. 281, 6-7, 19) See United States v. Torres, 908 F.2d 1417 (9th Cir. 1990); United States v. Armocida, 515 F.2d 29 (3rd Cir. 1975); United States v. Rizzo, 491 F.2d 215, 217, n.7 (2nd Cir. 1974), cert. denied, 416 U.S. 990 (1974). Agent Cole testified that there were no minimization logs recording why a telephone call was determined to be pertinent, innocent, irrelevant, or privileged. The Order refers to the fact that monitors could make notations on the computer in the place of a minimization log. (Doc. 399, 27-28) However, the Government presented no evidence of any notations regarding minimization of calls. Cole testified that for (229-402-7806), 4,675 calls were recorded, 633 were determined to be pertinent, and 670 were minimized, or 14 percent. No testimony was provided as to the remaining 1,372 recorded calls. For (229-347-1553), 1,789 calls were recorded, 189 were determined to be pertinent, and 262 were minimized, or fifteen percent. No testimony was provided as to the remaining 1,338 calls. For (229-392-9234),

of the 1,274 calls, 239 were determined to be pertinent and 94 were minimized, or 7 percent. Because the Government failed to show the calls were minimized, the Court should have found that the minimization requirements were not met.

11. Defendant objects to the Order's finding that the Government's failure to identify Royster in the wiretap applications as a targeted interceptee on Walker's telephones (229-347-1553; 229-402-7806; 229-392-9234) does not require suppression of evidence from the Walker wiretaps against Royster. (Doc. 399, 28-29) The order *sub judice* fails to specify the identity of Royster as a person whose communications may be intercepted on the targeted phones. The Order found that "Royster should have been named in the orders after probable cause existed to believe that his conversations would be intercepted in the course of monitoring Walker's phones," but that "Royster has failed to present evidence to demonstrate bad faith or prejudice due to this omission," and therefore, suppression would be inappropriate. (Doc. 399, 29) In the original affidavit on September 21, 2006, for wiretaps on Walker's (229) 402-7806 and (229) 347-1553, Leonard Royster is not named as a "person expected to be intercepted." (Tab B, p. 7-8) In the October 20, 2006, affidavit, i.e., the first extension on these phones, Royster is again <u>not</u> named as a "person expected to be intercepted" or potential interceptee, (Tab F, p. 8-9). In the November 21, 2006 affidavit for the second extension on phones (229) 402-7806 and (229) 347-1553, Royster is again not named as a "person expected to be intercepted." (Tab J, p. 8-9). In the October 24, 2006 affidavit for Walker's (229) 392-9234 phone, Royster is not named as a "person to be intercepted" and merely refers to "Attachment #1", the

affidavit seeking a 30-day extension on October 20, 2006 for (229) 402-7806 and (229) 347-1553 (Tab P, p. 8). In the affidavit seeking an extension on (229) 392-9234 on November 29, 2006, Royster is not named as a "person to be intercepted," but merely refers to "Attachment #1", the original affidavit submitted October 24, 2006 for (229) 392-9234. (Tab T, p. 8) Therefore, in all of the affidavits for wiretaps on Walker's telephones, and even the affidavits seeking extensions, the Government did not seek to intercept communications by Royster. Royster objects to the Order that the "defendant has shown no prejudice to him from omission of his name or bad faith on the part of the Government in failing to name him." (Doc. 399, 28-29) Royster was prejudiced by this omission because 1) his private communications were intercepted on Walker's wiretaps, 2) and the Government used these intercepted conversations to obtain a wiretap for Royster's telephone. 18 U.S.C. § 2518(4) states, "(4) Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify-- (a) the **identity** of the person, **if known,** whose communications are to be intercepted. (emphasis added)." Id. Here, the identity of Royster was known by the Government. See e.g. (Tab F, 13-24, 26-27, Tab J, pp. 16-17, 19-20)(as early as September 26, 2006, law enforcement recorded conversations between Royster and Walker and knew of Royster's identity). In fact, in Walker's affidavits, the affiant alleged conversations between Royster and Walker, yet in all five affidavits over the course of September 21, 2006 to November 29, 2006, Leonard Royster is not listed as an intended interceptee. See (Tab B, Tab F, Tab J, Tab P, Tab T, i.e., the affidavits and the affidavits for

extensions for Walker's telephones (229-347-1553; 229-402-7806; 229-392-9234) and see (Tab F, 13-24, 26-27; Tab J, 16-17, 19-20, Tab P, 11-13; Tab T, 6, 10, 12, i.e., the extensive references to Royster in the Government's investigation of Walker and their knowledge of Royster's identity).  Thus, because Royster's identity was known by law enforcement when the affidavits were issued and intended to intercept communications between Royster and Walker, Royster should have been named as an intended interceptee and is prejudiced as a result because the Government seeks to introduce evidence of said conversations against him at trial.

12. Defendant objects to the Order not finding the information in the affidavit to be stale and thus not a basis for probable cause. (Doc. 399, 29-33)  Again Defendant objects to the Order's findings based on evidence not admitted into evidence by adopting the allegations in the affidavits.  Defendant objects to the Order's finding that the information from the four informants acted to self-corroborate their stories and establish their reliability and credibility.  Defendant objects to the Order not finding that Agent Cole's statement in the affidavit, that "it was determined that Leonard Royster was one of the major sources of cocaine for Anthony Walker," was completely false and not supported by the record. (Doc. 399, 32)  Instead, the Order interpreted it to be "simply [Agent Cole's] assessment of information he learned from the conversations on Walker's phone, which provided information indicating that Walker and Royster were working together in the distribution of cocaine." (Doc. 399, 33)  The Order does not provide any reference to where this evidence was presented.

13. Defendant objects that the Order did not find the Walker wiretaps were untimely sealed. (Doc. 399, 33-36)  The Order held that Royster's wiretap (229-392-6181) were not timely sealed. (Doc. 399, 36)  However, the Order held that Walker's wiretaps were timely sealed.  Under 18 USC 2518(8)(a) all interception recordings must be sealed "**immediately** upon the expiration of the period of the order" allowing the interceptions.  In the absence of immediate sealing, the recordings must be suppressed, absent a satisfactory explanation from the Government stating not only why the delay occurred, but also why the delay is excusable.  United States v. Ojeda-Rios**,** 495 U.S. 257, 265 (1990).  Evidence presented at the suppression hearing revealed that the calls were intercepted and recorded on the DEA's mainframe in Atlanta.  Agents in Macon could simultaneously monitor the intercepted calls.  Agent Cole testified that the distance between Atlanta and Macon is approximately 83 miles and that it takes about one and a half hours to drive from one point to another if traveling at the posted speed.  Cole also testified that it is approximately 100 miles from Macon to Tifton.  Therefore, the trip from Atlanta to Tifton takes about three hours.  On December 5, 2006, law enforcement ceased interception of communications for (229) 347-1553, but did not seal the original recordings until December 8, 2006.  Thus, there was a three day delay in sealing these recordings.  Cole testified that he took possession of the recordings from Agent Jordan on December 6, 2006.  Cole then placed the DVD optical disk in his office and did not take them to be sealed by the judge in Tifton until December 8, 2006.  Cole's vague excuse for not getting the recordings sealed was that he had to meet with the District

Attorney and the judge and that the delay was somehow related in terms of their schedules. Cole did not present any memoranda or testimony that he was unable to bring the recordings before Judge McCorvey. Cole had at least eight individuals at his disposal working for the GBI and another eight individuals working for Mid-South in the case. There were at least twenty-six individuals directly involved in the investigation, and Cole had law enforcement agents directly available to him 24/7. December 5, 2006, was a Tuesday, a business day. Further, Cole sealed the recordings in the envelope instead of the judge, even though the original order required the Court to seal them. On December 20, 2006, law enforcement ceased interception of communications for (229) 402-7806 and (229) 392-9234, but did not seal the original recordings until December 22, 2006. For both of these recordings, Cole did not receive the recordings until December 22, 2006 from Agent Jordan, but when Cole received them, he drove straight to Tifton, Georgia, and had them sealed by Judge McCorvey the same day. There was no explanation by Jordan or Cole for why there was a delay in sealing these recordings. Cole's ability to drive directly from Macon to Tifton without first arranging schedules with Judge McCorvey and the District Attorney is also inconsistent with Cole's explanation for not timely sealing recordings for (229) 347-1553 because of schedules. The Defendant objects to the Order's finding that these numbers were timely sealed because they were sealed within two days, citing United States v. Matthews, 431 F.3d 1296, 1307 (11ᵗʰ Cir. 2005). (Doc. 399, 33-34) It is the Government's burden to show whether post-authorization requirements, such as timely sealing were met. 18 U.S.C. § 2518(8)(a) and (b). 18

U.S.C. § 2518(8)(a) dictates that all interception recordings must be sealed "*immediately* **upon the *expiration* of the period of the order**" allowing the interceptions.  In the absence of immediate sealing, the recordings must be suppressed, absent a satisfactory explanation from the Government stating not only **why the delay occurred**, **but also why the delay is excusable**.  United States v. Ojeda-Rios, 495 U.S. 257, 265 (1990).  Further, 18 U.S.C. § 2518(8)(a) is written to require sealing regardless of the schedules of the DEA, the Government, or the Court.  A magistrate is available to sign a wiretap order at any time; so too should a magistrate be available to seal a wiretap recording.  Sealing recordings is not a lengthy or cumbersome process and does not require any discourse.  Sealing takes but a few seconds and only consists of putting the tapes in an envelope and taping it in front of the judge's presence.  At the hearing, Defendant argued that the Court should <u>not</u> interpret <u>Matthews</u> to permit a two day rule to seal wiretaps.  Instead, in <u>Matthews</u>, the wiretap order in that case permitted that the wiretap would terminate "<u>upon attainment of the authorized objectives</u>, or in any event, at the end of thirty…days."  Therefore, the order in <u>Matthews</u> specifically provided that the recordings were not to be sealed until "**authorized objectives**" were achieved. The Court stated, "Indeed, **when, as here**, **an order expires upon the achievement of "authorized objectives" *rather than on a fixed date***, it is technically impossible to seal the recordings before the expiration of the order (emphasis added)." <u>Matthews</u>, <u>supra</u> at 1221. <u>United States v. Ojeda Rios</u>, 495 U.S. 257 (1990) (two day delay permitted when evidence showed custody of the tape prior to sealing and that it was an

"administrative delay"); <u>King v. State</u>, 262 Ga. 147, 414 S.E.2d 206, (1992).

Therefore, because no reasonable explanation could be given for delay in sealing

Walker's wiretaps, the evidence from these wiretaps should have been suppressed

from evidence at trial against Royster.

14. Defendant objects to the Order not suppressing evidence from the search of

Royster's residence at 3101 3rd Avenue in Tifton, Georgia. (Doc. 399, 38-44)

Defendant objects that the Order did not find that the information in the affidavit

was stale and did not provide probable cause for the search warrant to issue.  The

Order incorrectly states that corroboration of  Source 1's information was not

necessary for every statement.  However, none of Source 1's information could be

said to have been corroborated by law enforcement.  Defendant objects that the

Order did not make findings of fact and conclusions of law consistent with his

Opening Memorandum in Support of His Motion to Suppress Evidence. <u>See</u>

(Doc. 387)  Further, the Order finds that "According to law enforcement's

intelligence, **Royster did not keep narcotics at his home; a search of his home**

**would therefore be fruitless**." (Doc. 399, 24)  However, later the Order finds,

"**There was also probable cause to believe that evidence of criminal activity**

**would be discovered at Royster's house**." (Doc. 399, 42)  This is an inconsistent

finding of fact and the Court cannot have it both ways.  Therefore, Defendant

objects.

Under the Fourth Amendment "no Warrants shall issue, but upon probable

cause…."  The affidavit "must provide the magistrate with a substantial basis for

determining the existence of probable cause…." <u>Illinois v. Gates</u>, 462 U.S. 213,

239 (1983). Thus, probable cause exists " 'when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'" United States v. Williams, 162 Fed.Appx. 884 (11th Cir. 2006) quoting United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). In this case, the affidavit alleged three instances of "activity," but none can be said to be corroborated or verified as "criminal." In the first instance, the affiant alleged that "*on one occasion*" Royster met with Walker and delivered a "quantity" of cocaine on a country road.[7] The affiant alleged "this was *verified* thorough surveillance" and the use of a vehicle tracking device. Here, the affidavit failed to provide any date on which Royster allegedly possessed cocaine or delivered it. The affidavit also failed to state what exactly was "verified," for example, whether law enforcement actually observed any exchange or transaction between Royster and Walker. The affidavit contained no information on the location of the alleged exchange or how the informant came to learn of the alleged exchange. Instead, the affidavit merely bolstered an alleged meeting between Royster and Walker into something "criminal" by using the words "verified" and "surveillance" without actually describing what was "verified."

In the second instance of "criminal activity," the affidavit alleged that on November 17, 2007, law enforcement conducted surveillance on Royster's residence. Royster allegedly backed a Toyota into his garage with the trunk open. Royster then drove to a lot where he kept his semi parked and was seen carrying "something" to his semi. Royster then left the lot in a Toyota and drove to a Pilot

---

[7] There is no stated factual nexus between the "country road" and Royster's residence—the location sought to be searched. See below.

Truck Stop where he met with a male who was driving a burgundy semi.  Royster

then returned home.  The semi driven by the male was later stopped and money

was found in a black suitcase.  Here, the affidavit failed to allege any observation

by law enforcement of any exchange between Royster and the male individual at

the Pilot station.  The Government's Response to Defendant's Motion to Suppress

states that "Royster did in fact make contact with another individual and *transfer*

$828,970.00 *to that individual*," **however, the facts alleged within the four**

**corners of the affidavit <u>did not allege any transfer</u> between Royster and the**

**male, or allege that Royster was seen carrying anything to the male while at**

**the Pilot station.**  The affidavit <u>did not allege</u> Royster transferred or carried

<u>anything</u> to the individual.  Specifically, there was no mention of Royster carrying

a black suitcase, and, in fact, a black suit case was not revealed in the affidavit

until after the semi was later stopped and searched.  Thus, this second instance of

"activity" cannot be said to be "criminal."

In the third instance of alleged "criminal activity," the affidavit merely

alleged "Source 1 revealed that "in the past 48 hours Royster has spoken to the

source of supply in which Royster inquired about another shipment of cocaine."

Here, neither Source 1 nor the affiant were able to provide facts to support or

corroborate this allegation in the warrant application.  Further, the affiant did not

provide the context in which this alleged information was obtained or what was

actually said to lead the informant to believe Royster was inquiring about a

shipment of cocaine.  Thus, the affidavit was yet again void of any underlying

explanation of how this information was obtained by the informant and was void of any corroboration by law enforcement.

Further, where there is no sufficient independent corroboration of an informant's information, the affidavit must demonstrate the informant's veracity and basis of knowledge. Brundidge, supra, at 1352-1353 (Under the totality of the circumstances test, "the [informant's] 'veracity' and 'basis of knowledge' ... [are] relevant considerations ... that traditionally ha[ve] guided probable cause determinations: a deficiency in one may be compensated for by a strong showing as to the other.") quoting Illinois v. Gates, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983).

In this case, the affidavit did not provide independent corroboration or provide information to lead the magistrate to believe that the confidential informant was truthful or had a basis of knowledge. All the affidavit provided was the conclusory statement that "Affiant has been working with a confidential source, hereinafter referred to as Source 1, from the end of September to present which has been proven to be reliable and truthful." Thus, because the affidavit did not state facts supporting an independent judicial determination that the informant was reliable or state facts showing substantial corroboration by law enforcement, the alleged information from the confidential informant did not provide probable cause for issuance of the warrant. See United States v. Jackson, 470 F.3d 299 (6th Cir. 2006)(in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration); See also Pailette v. State, 232 Ga.App. 274, 277 (1998) (the

statement that an informant is truthful and reliable is conclusory and cannot support a substantial basis for probable cause).

"The Eleventh Circuit has held that <u>when a confidential informant witnesses first-hand</u> the alleged wrongdoing, greater weight is given to the confidential informant's veracity and basis of knowledge, and <u>corroboration may occur when the confidential informant is placed in 'circumstances under which [she/he] is unlikely to lie.</u>'" <u>United States v. Sutton</u>, 2007 WL 705044 (M.D.Fla.) No. 8:04-CR-325-T-17TBM, March 2, 2007, <u>quoting</u> <u>United States v. Brundidge</u>, 170 F.3d 1350, 1353 (11th Cir.1999) (<u>quoting</u> <u>United States v. Foree</u>, 43 F.3d 1572, 1576 (11th Cir.1995)).  In this case, no such thing was done.

In addition, the affidavit "must establish 'a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'" <u>United States v. Walthour</u>, 202 Fed.Appx. 367 (11th Cir. 2006), <u>citing</u> <u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002).  The affidavit provided no factual basis to link the "one occasion" of the alleged transaction "on a country road" or the meeting at the Pilot station to Royster's residence.  Therefore there is no factual connection other than the bald conclusions of an informant to provide any nexus to the residence.  The affidavit provided one sentence about the residence, that "Source 1 has revealed that Royster consistently receives and keeps most of the money generated from the sale of cocaine under his control and at the target residence."  Again, there is no underlying context for the allegation and no corroboration by law enforcement.  As such, the affidavit failed to "establish a connection between the defendant and

the residence to be searched and a link between the residence and any criminal activity." <u>Martin</u>, <u>supra</u> at 1314.

The information in the affidavit was also stale. The affidavit provided a date of November 17, 2006 – a month prior to the execution of the warrant – as an alleged date of criminal activity, but as stated above, the affidavit failed to allege any activity by Royster linking him to any criminal activity on this date. The only other information provided in the affidavit was that within the past 48 hours Royster spoke to his source of supply and inquired about another shipment. However, as stated above, this information was not corroborated and the affidavit failed to provide any context to this information. "While there is 'no [universal] time limit for when information becomes stale,' we have stated that, 'where an affidavit recites a mere isolated violation [,…] it is not unreasonable to believe that probable cause quickly dwindles with the passage of time.'" <u>Walthour</u>, <u>supra</u> at 369, <u>quoting</u> <u>United States v. Bervaldi</u>, 226 F.3d 1256, 1265 (11th Cir. 2000).

In this case, the affidavit sought "Cocaine, U.S. currency and all packaging, receipts, ledgers, documents, containers and proceeds derived from and used in the distribution of cocaine." (Exhibit A) Because the affidavit was non-particularized and overbroad, law enforcement seized various items, including a Food Saver vacuum system, food saver bags, saran wrap, a straw basket, a plastic container, rubber bands, money counter, miscellaneous documents, and U.S. currency located in various places of the house including safes and dresser drawers. Law enforcement also seized *$12,571 in*

***miscellaneous coins*** that the Government later alleged to be drug proceeds.[8]  The information in the warrant was insufficient to provide probable cause that the items listed to be seized would be found at the residence.  Further, the items to be seized were listed in such a non-particularized and overbroad manner that law enforcement conducted a general, exploratory rummaging of Royster's belongings. The Fourth Amendment provides that no search warrants should be issued without "particularly describing the place to be searched, and the person or things to be seized."  The particularity requirement's purpose is to safeguard against a "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443 (1971), and "ensure that the search will be carefully tailored to its justifications." Maryland v. Garrison, 480 U.S. 78, 85 (1987).

Lastly, there is at least one exception to the Leon exclusionary rule that applies, in particular, where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 923,104 S.Ct. 3405, 3421 (1984).  As shown above, affidavit failed to show the confidential informant to be reliable and truthful, failed to independently and substantially corroborate the information provided by the informant, failed to allege criminal activity during alleged corroboration, failed to provide a nexus of criminal activity to the residence, and contained stale information.  The affidavit was so lacking in probable cause that it was entirely unreasonable for a warrant to issue.

---

[8]    In the history of cases, there has never been a drug transaction case where coins were used.

WHEREFORE, we request the Court review the Court's Order de novo and that

Defendant's motion to suppress be granted in all respects.

This 18th day of December, 2007.

/s Bruce S. Harvey_____
BRUCE S. HARVEY, GA Bar No.  335175
Attorney for Defendant
146 Nassau Street, N.W.
Atlanta, GA 30303
(404) 659-4628

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

**UNITED STATES OF AMERICA,**    )
            )
**v.**                      )    **NO. 5:07CR-16-009 (WDO)**
            )
**LEONARD EARNEST ROYSTER,**    )
        **Defendant.**      )

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed the above *Defendant Royster's Objections to*

*the Court's Order* by electronically filing with the Clerk of the Court by using CM/ECF,

which will automatically send email notification of such filing to the following:

> Charles L. Calhoun
> P.O. Box 1702
> Macon, GA 31202-1702
> 478-752-3511
> Email: charles.calhoun@usdoj.gov
> Lead Attorney; Attorney to be Noticed

This 18th day of December, 2007.

> Respectfully submitted,
>
> */s Bruce S. Harvey*_____
> LAW OFFICES OF BRUCE S. HARVEY
> Bruce S. Harvey, Georgia Bar No. 335175
> Jennifer S. Hanson, Georgia Bar No. 001698
> K. Julie Hojnacki, Georgia Bar No. 434391
> 146 Nassau Street, NW
> Atlanta, GA 30303
> 404-659-4628
> Email: JoyGeske@yahoo.com
> Lead Attorney/Attorney to be Noticed